**PARFUMS STERN, INC., Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, United States Food and Drug Administration and certain John Does unknown to Plaintiff, Defendants.**

**No. 83–1116–Civ–SMA.**

United States District Court, S.D. Florida.

June 14, 1983.

Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiff.

Greenberg, Traurig, Askew, Hoffman, Lipoff & Wolf, Jon May, U.S. Atty., Sandler & Travis, Miami, Fla., Bass, Ullman & Lustigman, New York City, for defendants.

ORDER DENYING MOTION FOR PRE-
LIMINARY INJUNCTION AND VA-
CATING TEMPORARY RESTRAIN-
ING ORDER

ARONOVITZ, District Judge.

THIS MATTER comes before the Court upon the Plaintiff's Motion for Preliminary Injunction and the various John Doe Defendants' Motions to Dismiss. The Court has received evidence, taken testimony, heard oral argument of counsel for the parties, reviewed the motions, the memoranda of law in support thereof, and the responses thereto, the record, and the law. Having been fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED, for reasons as are more fully set forth in this Court's Memorandum Opinion which follows, that:

1. Plaintiff's Motion for Preliminary Injunction is DENIED;

2. The Temporary Restraining Order heretofore entered is VACATED as of 5:00 p.m., June 13, 1983, as to each consignee who has by that time filed herein an appearance setting forth the name of the consignee or owner/claimant;

3. Each consignee, through counsel, shall identify himself or itself forthwith or this Court will order and direct the Federal Defendants to substitute the redacted copy of that consignee's "Notice of Detention and Hearing" from Government's Exhibit 1 with an unredacted copy thereby identifying the importers. Plaintiff could then identify, add, and serve the consignees;

4. Any and all pending motions seeking to impose continuing anonymity on the John Doe Defendants are DENIED upon a finding that the argument of such anonymity by reason of alleged trade secrets is not supported by law or evidence; and

5. The Court RESERVES RULING on the Motions to Dismiss and will address them at a later time.

## MEMORANDUM OPINION

The Court has before it a Motion for Preliminary Injunction filed by the Plaintiff and several motions to dismiss, some on similar grounds and some on other grounds, filed on behalf of some of the John Doe Defendants. Heretofore, the Court held an abbreviated evidentiary hearing on the afternoon of June 3, 1983, and found it necessary to adjourn or recess that proceeding. On the basis of the testimony at that point adduced and supported additionally by affidavits submitted by the Plaintiff, this Court entered a Temporary Restraining Order for the purpose of maintaining the status quo pending a hearing on the Motion for Preliminary Injunction and the motions to dismiss.

The Court has, on June 9 and 10, 1983, held a continuation of that evidentiary hearing and has received testimony and exhibits offered by all parties. At the outset, the Court observes the following:

■ 1. The burden of proof of establishing the four prerequisites for the issuance of a preliminary injunction rests on the Plaintiff. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). In the view of the Court, the Plaintiff has not met that burden in a sufficient basis as will be noted herein and hereafter.

■ 2. The Court likewise notes and takes recognition that the bare issuance of a trademark under most circumstances constitutes a prima facie showing of entitlement to the protections arising therefrom.

3. The Court also notes that at a final hearing, wherein the testimony would be more complete and set forth with documentary evidence, before which discovery would be permitted of the John Doe Defendants, there exists a likelihood that there would be a different result achieved from that upon which this Order rests.

■ 4. The Court notes, finally, that Plaintiff has not established that Oscar de la Renta products presently being held under the auspices of the United States Customs, under Order of this Court, are counterfeit, copied, or adulterated. That burden also rests on the Plaintiff. The Court

understands that, without access to the products, Plaintiff had difficulty making that determination. Nevertheless, the burden is on the Plaintiff in that regard.

### Findings of Fact

In support of its Order Denying Plaintiff's Motion for Preliminary Injunction, and pursuant to Rule 56, Fed.R.Civ.P., the Court enters the following Findings of Fact:

Plaintiff is a cog or entity in what appears to be a single international enterprise operating through an amoeba-like structure consisting of members of Milton Stern's family, various parent and subsidiary corporate enterprises, both foreign and domestic, interrelated, each to the other or to the Sterns. This conglomerate consists of corporations incorporated under the laws of several states of the United States as well as several foreign corporations organized under the laws of the Channel Islands, France, and, formerly, Monaco. This entity, either by reason of holding the Oscar de la Renta trademark or by way of license and/or contractual rights granted to it or one of its entities, holds the right to manufacture, distribute, promote, or otherwise utilize Oscar de la Renta fragrance products throughout the world. As such, this single international enterprise has caused to be manufactured and sold abroad, in particular, products bearing the Oscar de la Renta trademark to distributors and licensees. In most instances, these products are offered for resale in various countries throughout the world under standards and criteria developed by the enterprise.

It also appears that, in some instances, the distributors, licensees, and/or users of the tradename and products have included designations stating that the recipients would exercise their or its best efforts to use or cause to be used the products in a certain territorial area. Evidently, some of the enterprise's foreign distributors, licensees, or users in the chain are selling what appears to the Court circumstantially, if not directly, to be genuine Oscar de la Renta products for re-sale or ultimate importation into the United States through what is known as the "parallel" or "gray market". "Gray market" goods are goods produced by a foreign manufacturer and bearing that manufacturer's trademark, which are purchased abroad and imported into this country by persons other than the manufacturer's authorized United States distributor.

As a result, there were, at the time this suit was filed, eighteen consignments of such products within the custody of or under the control or direction of the United States Customs Service in Miami, Florida. Plaintiff filed this action against the United States Customs Service and the United States Food and Drug Administration, naming additionally various John Does, presumably the consignees or owners/claimants of the consignments. That complaint sought relief under Titles 15, 19, and 21 of the United States Code, and specifically under the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., and the Tariff Act, 19 U.S.C. § 1526.

The various consignees were served with an In Camera Order to Show Cause issued by this Court on May 26, 1983, as a result of a stipulation entered into between the Plaintiff and the Federal Defendants. The consignees have appeared herein as John Does through counsel, each of whom has identified their clients through the consignment numbers. There now appears to be represented before the Court fifteen of the remaining sixteen consignees (two other consignees having been previously voluntarily dismissed by the Plaintiff).

The Court has allowed such incognito appearances up to this point for the purpose of testing the Motion for Preliminary Injunction and the other proceedings before the Court, in that there were substantial property rights and property interests presented before the Court. However, the Court hereafter rejects the requests of any John Doe Defendant who has claimed a right of secrecy or anonymity by reason of alleged trade secrets finding no satisfactory showing having been made thereon.

The Court finds that Plaintiff and its related or affiliated companies have spent considerable money in advertising and promoting the name "Oscar de la Renta" in the United States and elsewhere throughout the world. The Plaintiff stands behind its product and has developed goodwill in conducting its business.

The Court further finds that in the exercise of its prerogative to cause the Oscar de la Renta products to be placed into the international stream of commerce, the Plaintiff and its affiliated companies have found themselves in circumstances wherein their products are finding their way into the United States not by way of or through any illegal means and therefore the Plaintiff which holds the United States trademark is seeking the protection of the trademark laws to insulate itself from what it placed in motion itself through its own foreign manufacturing and distribution sources.

Additionally, the Court finds that the Plaintiff's international enterprise was paid and receives compensation for the Oscar de la Renta products which are manufactured and produced by one of the Plaintiff's entities and that Mr. Oscar de la Renta or Oscar de la Renta, Ltd., receives the royalties due it. Therefore, there is no evasion of legal rights flowing either to the manufacturer in the first instance or to the person or entity entitled to the royalties. What is occurring is that a complete circle has brought some of the Plaintiff's products back to haunt it in the United States.

### Conclusions of Law

Initially, the Court finds that it does have jurisdiction over the subject matter of this action and personal jurisdiction over the Defendants. 15 U.S.C. § 1121, 28 U.S.C. §§ 1332, 1346.

Having made that determination, the Court moves to the question of whether a preliminary injunction should issue. In that regard, we are guided by *Canal Authority of Florida v. Callaway*, 489 F.2d

567 (5th Cir.1974), which sets forth the following prerequisites for the issuance of a preliminary injunction: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm that injunction may do to the defendant; and (4) granting the preliminary injunction will not disserve the public interest.

A. For reasons stated below, the Court finds that Plaintiff has not shown a substantial likelihood that it will succeed on the merits:

1. Protections designed and intended to be afforded under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, singularly do not apply to the facts and circumstances on the basis of the evidence adduced at this hearing and to this point.

2. The facts adduced are not similar to the case of *A. Bourjois & Co., Inc. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923), which this Court respects and fully recognizes as the law of the land. In *Bourjois*, the Supreme Court held that a foreign manufacturer, who had sold his business and trademark in this country to the plaintiff, could not subsequently come to this country and use his old trademark in competition with the plaintiff. The Court's underlying reasoning was that the use by the domestic corporation of the trademark bought from the foreign manufacturer indicated that the goods came from the domestic buyer of the mark, although not made by it, and staked the reputation of the domestic buyer on the character of the goods.

3. Likewise, this Court concludes that while *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 548 F.Supp. 1063 (E.D.N.Y. 1982), *appeal pending*, no. 82–7867 (2nd Cir.), might appear to be an admirable statement of current law, it is not applicable to the facts of this case.* Significantly

---

* The preliminary injunction granted by the District Court in *Bell & Howell: Mamiya Co. v.*

missing was the fact that *Bell & Howell* did not involve a single international enterprise, so interrelated amongst the individuals, corporate entities, and structure that would necessarily result in the type of ruling that this Court now makes preliminarily herein. The defendant in *Bell & Howell* only owned seven per cent of the plaintiff's stock and "there [was] no evidence that it exert[ed] any control over plaintiff's policies and operations." *Id.*, at 1079. In the instant case, however, the record is replete with references to the interrelation between the Plaintiff corporation and its branches (Vision Stern, Inc., *et al.*) and the foreign distributing corporation and its branches (Vision Stern, Ltd., *et al.*).

4. *United States v. Guerlain, Inc.*, 155 F.Supp. 77 (S.D.N.Y.1957), *appeal dismissed*, 357 U.S. 924, 78 S.Ct. 1368 (1958), is actually closest in terms of a factual similarity to the case at bar except that the nature of the action and type of relief involved there were completely different. *Guerlain* concerned three consolidated antitrust actions brought by the United States under section 2 of the Sherman Anti-Trust Act. The defendants were accused of attempting to monopolize the importation into and sale within the United States of certain trademarked toilet goods. The court held that the exclusion by the defendant American corporations from importation by others of goods manufactured, sold, and distributed by their associated French companies and bearing the same trademarks as those used by the defendants constituted a monopolistic violation of the Sherman Act. In that case, as in this one, there was a strong relationship between the domestic trademark-holding importer and the foreign manufacturer and an attempt by the domestic importer to monopolize the importation of the foreign manufacturer's goods into the United States.

Plaintiff has not demonstrated that there is a reasonable basis upon which the relief it seeks can be granted. Based upon the

record before this Court at this time, Plaintiff has therefore not established a substantial likelihood of success on the merits, which is the first prerequisite for the issuance of a preliminary injunction under *Canal Authority, supra.*

B. The Court likewise finds that the issue of whether or not irreparable harm or substantial threat exists can be measured in terms of the testimony, which indicates that circumstances similar to these have existed for several years. The evidence presented at the hearing revealed that the "parallel" or "gray market" in Oscar de la Renta goods has existed for many years and that Plaintiff has not heretofore sought to prevent the importation of Oscar de la Renta products by this market nor has Plaintiff challenged Customs service policy permitting the unrestricted importation of these goods. In measuring what has occurred during that time, in terms of the growth of the business, it can hardly be said at this point that on the basis of the evidence adduced that Plaintiff would suffer irreparable harm if the subject goods were, like so many other shipments before them, permitted to enter the commerce of the United States and, even if so, that such harm would not be compensable by monetary damages.

C. The third requirement—that the injury to the Plaintiff in the absence of an injunction will be greater than to the Defendants if the relief is granted—has also not been met. As stated above, Plaintiff has been unable to demonstrate how allowing the subject goods to be imported will irreparably harm it in view of its failure to have previously asserted its alleged right to prevent these goods from being imported. The pleadings and testimony reveal that in reliance upon Plaintiff's apparent acquiescence to the importation of Oscar de la Renta fragrance products through the "parallel" or "gray market", the John Doe Defendants have purchased the subject merchandise, imported it into the United

*Masel Supply Co.*, 548 F.Supp. 1063 (E.D.N.Y. 1982) was vacated and remanded by the Court of Appeals for the Second Circuit after the is-

suance, but before the publication, of the instant Order. See *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42 (2nd Cir.1983).

States, and sold, or committed for sale, the subject merchandise to United States distribution outlets. Thus, the injury to the John Doe Defendants would be far greater than to the Plaintiff in that deprivation of the goods is likely to cause these Defendants to default on delivery orders necessary to place goods on the shelves during one of the most significant selling seasons for fragrance products: Mother's Day and Father's Day. Plaintiff has therefore not met the third requirement for the issuance of a preliminary injunction under *Canal Authority, supra.*

D. Finally, the issue of whether an injunction would or would not be adverse to the public interest balances in favor of the John Doe Defendants and not the Plaintiff at this point. There has been no showing that the public would be harmed or is being harmed by the importation of these "parallel" of "gray market" goods. On the contrary, there is a strong likelihood that any Oscar de la Renta fragrance products offered by the John Doe Defendants or Plaintiff may in fact be guaranteed by Plaintiff itself or one of its affiliates, thereby protecting the public from defective or inferior Oscar de la Renta fragrance products. Additionally, there is adequate evidence that the public has the benefit of lower prices in that those products offered by the John Doe Defendants are usually less expensive than those sold by Plaintiff through its authorized distributors. Therefore, it appears that the Court would be doing the public a disservice by preventing the dissemination of what appears to the Court, uncontroverted, to be equally good, yet less expensive, legitimate Oscar de la Renta fragrance products.

The foregoing conclusions of law are made and entered in support of a finding that based upon the record before the Court at this time, that Plaintiff has not

established the four prerequisite requirements to the issuance of a preliminary injunction as set forth under *Canal Authority, supra.*

The Court would like to make clear that this ruling is based solely on the record before the Court at this time. This is not to say that after a trial, after full and complete discovery, and after all issues have been heard, that the determination of this Court cannot be different. However, this Court must rule on the basis of the record presented before it and this ruling is the result thereof.

Thereupon, it is

ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion for Preliminary Injunction is DENIED;

2. The Temporary Restraining Order heretofore entered is VACATED as of 5:00 p.m., June 13, 1983, as to each consignee who has by that time filed herein an appearance setting forth the name of the consignee or owner/claimant;

3. Each consignee, through counsel, shall identify himself or itself forthwith or this Court will order and direct the Federal Defendants to substitute the redacted copy of that consignee's "Notice of Detention and Hearing" from Government's Exhibit 1 with an unredacted copy thereby identifying the importers. Plaintiff could then identify, add, and serve the consignees;

4. Any and all pending motions seeking to impose continuing anonymity on the John Doe Defendants are DENIED upon a finding that the argument of such anonymity by reason of alleged trade secrets is not supported by law or evidence; and

5. The Court RESERVES RULING on the Motions to Dismiss and will address them at a later time[1].

---

1. On June 10, 1983, the Federal Defendants, through counsel, announced in open Court that the United States Customs Service now had no reason under law to prohibit the importation of any of the subject consignments or exportation of the consignments, if requested. Therefore, the original stipulation entered into between Plaintiff and the Federal Defendants on May 23, 1983, which resulted in the issuance of the In Camera Order to Show Cause on May 26, 1983, was tardily mooted and any objection by the Federal Defendants to importation or exportation of the subject goods was removed voluntarily, subject, of course, to Food and Drug Admin-

istration requirements. In other words, the Customs Service saw no lawful reason why it

could not admit the consignees' merchandise into the United States.