**SELCHOW & RIGHTER COMPANY, Plaintiff,**

v.

**GOLDEX CORPORATION, John A. Ishmael, and 800 Marketing, Inc., Defendants.**

**GOLDEX CORPORATION, Counter-plaintiff,**

v.

**SELCHOW & RIGHTER, COMPANY, Horn Abbot, Ltd., Walter D. Ames, Warson, Cole, Grindle & Watson and John Does 1–50, Defendants.**

**No. 84–8264-Civ-Paine.**

United States District Court, S.D. Florida.

Feb. 20, 1985.

Walter Ames, Kathy Klock, Miami, Fla., for plaintiff.

Charles Wender, Boca Raton, Fla., Robert Stone, Edward Joffe, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

PAINE, District Judge.

This cause is before the Court for consideration of the plaintiff, Selchow & Righter Company's Motion for Summary Judgment, or alternatively, for a Preliminary Injunction (DE # 20). A hearing on this motion was held on October 26, 1984. After reviewing the record in this cause, the various submissions of the parties and considering argument of counsel, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The plaintiff, Selchow & Righter Company ("S & R") is a New York Corporation which manufactures family games. Horn Abbot, Ltd. ("Horn Abbot"), a Canadian corporation, is the originator of the Trivial Pursuit-brand games which have achieved amazing popularity in the United States and Canada. In conjunction with its plan to sell and distribute these games in the United States, Horn Abbot obtained and is the legal owner of the following trademarks, design patents, and copyrights covering Trivial Pursuit-brand games: [1]

1. "Trivial Pursuit"—U.S. Registered Trademark No. 1,236,540.

2. Game Board Design—U.S. Design Patent No. 270,741.

3. Game Board—U.S. Copyright Registration No. U.A. 95–532.

4. Rules and Cards—U.S. Copyright Registration No. TX 846–925.

On November 19, 1982, Horn Abbot executed an exclusive license agreement whereby Horn Abbot granted the exclusive right to manufacture, use and sell Trivial Pursuit-brand games in the United States, its territories and possessions to S & R. This agreement also provides that these rights are exclusive even as to Horn Abbot.[2]

Trivial Pursuit-brand games (Genus Edition) manufactured by S & R in the United States consist of a playing board, rules and card sets, plastic playing pieces, a die and an advertising brochure. Additional card sets printed in the United States, for example the Silver Screen and Baby Boomer editions, contain only the rules, the card sets, and the advertising brochure. Games manufactured in Canada are identical to those manufactured in the United States with some exceptions: (1) The S & R wheel logo does not appear on the boxes of games manufactured in Canada, except those manufactured by Chieftain Products, discussed *infra* at p. 22; (2) complete game

---

1. Copies of these registrations were attached to the amended complaint filed in this cause. In addition to the fact that these registrations are deemed presumptively valid in the absence of any facts asserted to the contrary (*See, Coca-Cola v. Overland*, 692 F.2d 1250 (9th Cir.1982) this Court is not persuaded by argument of defense counsel that the plaintiff must conclusively prove the validity of these registrations, especially in light of the fact that defendant

Goldex Corp. apparently relies on their existence and validity in its counterclaim (DE # 9, ¶ 12).

2. By order dated August 27, 1984, this Court preliminarily determined that this agreement constitutes an assignment under applicable law, as opposed to a mere license.

sets (i.e. complete with playing board, card sets, playing pieces, etc.) are manufactured in Canada for several editions (e.g. Genus edition, Baby. Boomer edition, Silver Screen, etc.) whereas only one edition (Genus edition) is manufactured in the United States as a complete set. All other editions manufactured for the United States market (e.g. Baby Boomer edition) are available only as additional card sets; (3) several questions and/or answers in the Canadian version were deemed by S & R to be offensive and unsuitable for family participation. Accordingly, games manufactured in the United States contain some different subject matter, and/or different words or phrases; (4) games manufactured in Canada do not contain a S & R advertising brochure.

S & R maintains a manufacturing plant in Holbrook, L.I., N.Y. In addition to manufacturing games there, S & R hires "printing brokers", who act as agents of S & R, to manufacture the games as well. One of these printing brokers hired by S & R is Cornacchia Press, Inc. ("Cornacchia"). When S & R first began manufacturing Trivial Pursuit games in November, 1982, Cornacchia was hired to print and collate the card sets for S & R. In turn, Cornacchia subcontracted with Banta Company in Menasha, Wisconsin to do the actual printing and collating of the cards [Cornacchia deposition, DE # 75; pp. 13–18]. The finished card sets were delivered to S & R's manufacturing plant in Holbrook, Long Island.

Sometime in 1983, Cornacchia began manufacturing and assembling complete game sets for S & R (the actual production of these games was done by Banta Company; Cornacchia supervised the production) [Cornacchia deposition, DE # 75; pp. 23–25]. In order to meet increased demand for the game, Cornacchia also subcontracted with Chieftain Products, a Canadian printing broker, and Western Publishing Co. of Wisconsin to manufacture complete game sets for S & R. [Cornacchia deposition, DE # 75; pp. 26–27 and p. 30]. Apparently, Chieftain Products was also the manufacturer utilized by Horn Abbot to produce the Canadian games [Cornacchia deposition, DE # 75, p. 31]. The method utilized for payment consisted of Chieftain billing Cornacchia per game. Cornacchia would pay Chieftain. Thereafter, Cornacchia billed S & R. [Cornacchia deposition, p. 43]. The games manufactured by Chieftain for Cornacchia comprise 15% of all the games manufactured for S & R. In other words, 15% of all Trivial Pursuit games sold by S & R in the United States and its territories are manufactured in Canada.

The defendants Goldex Corporation ("Goldex"), John Ishmael ("Ishmael") and 800 Marketing, Inc. are Florida residents. Ishmael is an officer of both corporations. The stock of Goldex is owned by a family trust; Ishmael's family members are the beneficiaries of the trust and Ishmael is the trustee. Each company operates what is essentially a "mail order" business. That is, they offer goods for sale through magazine and newspaper advertisements, obtain goods from different sources, and mail or ship the goods per customer order.

Due to the enormous popularity of the game "Trivial Pursuit", S & R has had difficulty in supplying retail outlets in the United States to meet customer demand. Seizing on this short supply, Goldex (acting through Ishmael) contacted a representative of S & R to inquire about obtaining a large supply of games to distribute through his mail order businesses. S & R referred him to a Miami "jobber". Further inquiry elicited the information that this "jobber" could not supply him with the quantity desired. Ishmael also made inquiries in Canada, directed to Horn Abbot and Chieftain. Both companies refused to supply him with any games and informed Ishmael of the exclusive license agreement. Ishmael then made arrangements with a Canadian corporation, Goldex of Canada, to buy the Canadian versions of Trivial Pursuit-brand games. Evidence submitted by Ishmael (Def. Ex. 1) shows that he checked with U.S. Customs before importing any games into the United States; U.S. Customs informed him that the Trivial Pursuit trademark had not been registered with

U.S. Customs by Horn Abbot or anyone else.

Ishmael states that he sells approximately .001% of all Trivial Pursuit games, most of which are Baby Boomer editions. He admits that most of "his" games are shipped from Canada and, occasionally, he buys games from local retailers/wholesalers. His major medium for advertising is *USA Today.* Exhibits of advertisements submitted by both parties (Def.Ex. # 2; Pl.Ex. # 2) show that, in addition to the Genus and Baby Boomer editions, the defendants offer such games as "Sexual Trivia", "Junior Trivia" and "Bible Trivia", all of which are under the heading "Trivial Pursuit". The ads also show "Goldex-800" as the offeror. Ishmael testified that he offers a "100% money-back guarantee", however, no mention of guarantee is contained in the ads for Trivial Pursuit games.

Mr. Selchow, president of S & R, testified that the games imported from Canada are causing his company to lose advertising clout (since they do not contain a S & R advertising brochure), and generate dissatisfaction among S & R distributors (who cannot import the game from Canada and who are in consistently short supply) as well as S & R customers because of the sale of "Sexual Trivia". S & R concludes that, as a manufacturer of family type games, its reputation is injured by the sale of "Sexual Trivia".

## CONCLUSIONS OF LAW

Fed.R.Civ.Pr. Rule 56(c) provides that on motion for summary judgment, the moving party must demonstrate that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. Once the moving party has made this showing, the burden shifts to the opposing party to come forward with significant probative evidence demonstrating a triable issue of fact. *American Viking Contractors, Inc. v. Scribner Equipment Co.,* 745 F.2d 1365 (11th Cir.1984).

**3.** 35 U.S.C. § 282; 17 U.S.C. § 410(c); 15 U.S.C. § 1051; *See, Coca-Cola Co. v. Overland, Inc.* 692

There being no genuine issue or dispute between the parties as to the foregoing findings of fact or, no proof to the contrary being offered or elicited, the Court's first inquiry must be whether those uncontroverted facts establish a claim entitling the plaintiff to judgment as a matter of law.

## PLAINTIFF'S CASE

The plaintiff S & R is the assignee in the United States of registered U.S. trademarks, design patents and copyrights owned by Horn Abbot, Ltd. (*See,* this Court's order of August 27, 1984). These registrations are presumptively valid.[3] The defendants admit that they are importing Trivial Pursuit-brand games from Canada and are selling them in the United States by mail order. The imported games are those manufactured and distributed by Horn Abbot in Canada. The plaintiff has not given the defendants permission to sell these Canadian games in the United States.

### I. *Statutory Trademark Infringement*

"The primary and proper function of a trademark is to identify the origin or ownership of the article to which it is affixed" *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916). As such, 15 U.S.C. § 1114(1) (the Lanham Trademark Act § 32(1)) provides, in pertinent part, that

any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; ...

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

The gravaman of an action for trademark infringement is that the use of

F.2d 1250 (9th Cir.1982).

the infringing mark is likely to confuse consumers as to the source of the product, its endorsement by the trademark holder, or its connection with the holder. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.* 549 F.2d 368 (5th Cir. 1977). In determining whether there is a likelihood of confusion between marks, the Court must evaluate a number of factors including the type of trademark, similarity of design, similarity of product, identity of retail outlets and purchasers, similarity of advertising media used, defendant's intent, and actual confusion. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir.1980), *cert. den.* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816.

■ The plaintiff S & R has shown that there exists a substantial likelihood of confusion between Trivial Pursuit-brand games originating from the United States manufacturer (S & R) and Trivial Pursuit-brand games originating from the Canadian manufacturer (Horn Abbot). The trademark "Trivial Pursuit" affixed to both games (and the product itself) are virtually identical. S & R does not identify itself with any particular retail outlet, so consumers are not put on notice as to the origin of the goods.[4] Mr. Selchow testified that purchasers of Canadian Trivial Pursuit-brand games often call or write to his company regarding offensive words/phrases which are contained in that version of the game.

■ The advertisement submitted by the defendants show that a number of trivia games are offered for sale by the defendants under the trademark "Trivial Pursuit". The ad lists "Baby Boomer or Genus Edition—complete game; Bible Trivia and Junior Trivia". Mr. Selchow testified that his company does not manufacture either the complete game set for Baby Boomer editions or Junior Trivia or Bible Trivia games; nor is there any allegation by the defendants that S & R does manufacture those games. It is unknown whether Horn Abbot manufactures Junior Trivia and Bible Trivia games. Another advertisement, submitted by the plaintiff, shows that the defendants offer the above-enumerated games for sale, as well as the game "Sexual Trivia", under the heading "Trivial Pursuits".[5] Given the fact that the plaintiff has shown that a number of S & R customers associate "Trivial Pursuit" with S & R, the Court concludes that the plaintiff has shown that a substantial likelihood of confusion exists [6] and has proved its case for statutory trademark infringement.

## II. *Common Law Trademark Infringement*

■ S & R has acquired a common law trademark in the State of Florida by virtue of its adoption and continuous use in this state of the trademark "Trivial Pursuit" in connection with an established business. *See, Crown Central Petroleum Corp. v. Standard Oil Co.* 135 So.2d 26, *cert. den.* 142 So.2d 731 (Fla.1962); and *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114 (5th Cir.1973).

■ The same elements necessary to prove statutory trademark infringement (as set forth previously herein) would also establish common-law trademark infringement. *See, eg., Mako Marine, Inc. v. Mako Inc.*, 328 F.Supp. 177 (S.D.Fla.1971). The Court, having found that S & R has proved a case for statutory trademark infringement, also finds that S & R has proved common-law trademark infringement.

---

4. The S & R wheel logo is only displayed on the side of the box. It is only displayed on games manufactured by S & R. An ordinary consumer, however, is not likely to look for that logo.

5. In the ad submitted by the defendants, the trademark "Trivial Pursuit" is written in script. In the ad submitted by the plaintiff, the heading "Trivial Pursuits" is written with block letters.

6. Evidence of actual confusion is not a prerequisite for finding that a *likelihood* of confusion exists. *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186 (5th Cir.1981); *Holiday Inns, Inc. v. Holiday Out In America*, 481 F.2d 445 (5th Cir.1973).

## III. *Patent Infringement*

35 U.S.C. § 271(a) provides that "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent". The term of the patent, (filed in November 1981) is for 14 years. There is no question that the defendants have been, and are, selling the game board (the patented article) in conjunction with Trivial Pursuit-brand games in the United States during the term of the patent. The majority of game boards sold by the defendants in the United States are imported from Canada, and are sold in the United States without the authority of the exclusive licensee, S & R, who stands in the shoes of the patentee. The plaintiff has established that its patent rights have been and are being infringed by the defendants. *See, e.g., Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.* 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964); and *Shields v. Halliburton Co.*, 493 F.Supp. 1376 (W.D.La.1980), affm'd. 667 F.2d 1232 (5th Cir.1982).

## IV. *Copyright Infringement*

17 U.S.C. § 501 provides that "anyone who violates any of the exclusive rights of the copyright owner ... or who imports, copies or phonorecords into the United States in violation of Section 602, is an infringer of the copyright." [7] The exclusive rights of a copyright owner include the rights of manufacturing, distributing and selling the copyrighted work. 17 U.S.C. § 106(1) and (3).

The copyrights obtained by the inventors of the game pertain to the game board and to the rules and card sets used in conjunction with the game. The defendants admit they are importing Trivial Pursuit-brand games containing the copyrighted works from Canada and are selling these games in the United States without the permission of S & R, who is the holder of the exclusive rights under the registered copyrights. Unauthorized use of copyrighted material which is inconsistent with the exclusive rights enumerated in Section 106 constitutes copyright infringement. *Teleprompter Corp. v. Columbia Broadcasting System, Inc.*, 415 U.S. 394, 94 S.Ct. 1129, 39 L.Ed.2d 415 (1974). Accordingly, the defendants' sale in the United States of Trivial Pursuit-brand games acquired in Canada and containing copyrighted material constitutes copyright infringement.

## DEFENDANTS' REBUTTAL

The plaintiff having supported its motion for summary judgment for trademark, patent and copyright infringement, the burden shifted to the defendant to come forward with significant probative evidence demonstrating a triable issue of fact.

At the hearing in this cause, the defendants alleged that there exist four (4) genuine issues of material fact: (1) That the plaintiff denies that the two games (i.e. those games manufactured in the United States vs. those games manufactured in Canada) are identical; (2) that the plaintiff failed to establish that all three (3) defendants participated in acts constituting infringement; (3) that, in defense to the claim for patent infringement, there exists a relationship in restraint of trade, including tying of products and price-fixing (patent misuse) in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq.; [8] and (4) that the plaintiff can not prevent the importation and sale in the United States of "parallel" or "genuine" goods manufactured outside the United States by the original manufacturer.

## I. *Identical Games*

The plaintiff concedes that the two games and the trademarks are identical, with a few minor exceptions (set forth specifically in the Court's findings of fact). It

---

7. 17 U.S.C. § 602(a) prohibits importation without the consent of the copyright owner into the U.S. of copies or phonorecords of a work acquired outside the U.S. and defines such action as an infringement of the exclusive right to distribute.

8. This allegation is also the subject of defendant Goldex's counterclaim.

is the plaintiff's position that, regardless of the fact that the Canadian games are identical to the United States games, S & R has the right to prevent their sale in the United States. Thus, there is no issue as to whether the goods are identical.

## II. *Joint Liability of Defendants*

The defendants claim that there is a genuine issue of material fact as to whether defendants Ishmael and 800 Marketing are liable for acts constituting infringement. In a previous order, this Court considered the defendants' motion for summary judgment. The defendants contended that since both Ishmael and 800 Marketing, Inc. were acting on behalf of Goldex, neither could be liable. The Court ruled that *if* S & R proved infringement, and *if* S & R proved that both Ishmael and 800 Marketing participated in acts constituting infringement, then all three (3) defendants could be liable as a matter of law. Accordingly, the defendant's motion for summary judgment was denied because the plaintiff demonstrated a genuine material issue of fact. The proverbial shoe is now on the other foot. The plaintiff is requesting summary judgment on the issue of infringement and all other issues connected therewith—including the issue of joint liability.

■ Defendant Ishmael is an officer of both Goldex Corp. and 800 Marketing. He is the legal owner (as trustee) of all Goldex stock; his family members are the beneficial owners. During the hearing in this cause, Ishmael admitted the acts constituting infringement. When Ishmael described the acts of soliciting the cooperation of Goldex of Canada in importing Trivial Pursuit games into the United States, placing ads in *U.S.A. Today*, filling orders, etc., he used the terms "we" and "I" to describe who performed these actions. The ads submitted by both parties (Plaintiff's Exhibit # 2; Defendants' Exhibit # 2) show that

the games are offered for sale by "Goldex-800". Mr. Ishmael testified that "Goldex-800" is not a separate company. Goldex primarily handles the arrangements for shipping the games sold to customers; 800 Marketing handles arrangements for payment of the goods by credit card. *See* Affidavit of John Ishmael, DE # 55. The evidence submitted by the defendants shows that they are jointly involved in the importation and sale of Canadian Trivial Pursuit-brand games. As such, all three (3) defendants are responsible for any liability connected therewith. *See, Mead Johnson and Co. v. Baby's Formula Service, Inc.,* 402 F.2d 19 (5th Cir.1968).

## III. *Relationship in Restraint of Trade; Tying of Products and Price Fixing Defenses.*

■ In their counterclaim, and as affirmative defenses, the defendants allege a relationship in restraint of trade, including tying of products and price fixing. The basis for these defenses (which focus, for the main part, on the patent rights held by the patentee and/or his assigns) lies in the maxim that a court of equity will deny a patentee the right to enforce his patent where the patentee has used or attempted to use his legal rights thereunder in violation of the anti-trust laws; i.e. one may not seek affirmative relief in a court of equity with "unclean hands". *See, for eg., Extractol Process Ltd. v. Hiriam Walker & Sons, Inc.,* 153 F.2d 264 (7th Cir.1946).

### a. Relationship in Restraint of Trade

The defendants contend that the exclusive license agreement is per se illegal (and is therefore unenforceable) because it imposes territorial restrictions.[9] The defendants argue that, as a matter of law, the patentee (Horn Abbot) is precluded from assigning its patent rights to a specified

---

9. As to the validity of exclusive license agreements, generally, *See, Cataphote Corp. v. Desoto Chemical Coatings, Inc.,* 450 F.2d 769 (9th Cir.), *cert. den.* 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972); *Rail-Trailer Co. v. ACF Industries, Inc.,* 358 F.2d 15 (7th Cir.1966); *American Pho-* *tocopy Equipment Co. v. Rovico, Inc.,* 257 F.Supp. 192 (N.D.Ill.1966); *affmd.* 384 F.2d 813, *cert. den.,* 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1133; *Foundry Services, Inc. v. Beneflux Corp.,* 110 F.Supp. 857 (S.D.N.Y.1953); *rvsd.* on other grounds, 206 F.2d 214.

territory such as the whole of the United States, its territories and possessions.

■ On the contrary, 35 U.S.C. § 261 specifically authorizes the assignment of an exclusive right under a patent to the whole or any part of the United States. Cases interpreting this section hold that such an assignment by the patentee is not a violation of the anti-trust laws. *See, Dunlop Company, Ltd. v. Kelsey-Hayes Co.*, 484 F.2d 407 (6th Cir.1973); *Brownell v. Ketcham Wire & Manufacturing Co.*, 211 F.2d 121 (9th Cir.1954) and *Deering, Milliken & Co., Inc. v. Temp-Resisto Corp.*, 160 F.Supp. 463 (S.D.N.Y.1958), *aff'd. in part, rv'd, in part on other grounds*, 274 F.2d 626. Consequently, the mere grant of an exclusive license under a patent to the whole of the United States is not an illegal territorial restriction.

### b. Tying of Products or "Tie-in" arrangement.

■ A "tying arrangement" in violation of 15 U.S.C. §§ 1–7 is an agreement by one party to sell one product but only on the condition that the buyer also purchases a different product, or at least agrees that he will not purchase the product from any other supplier. *Northern Pacific Railway Co. v. U.S.*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1948); *See also, Bell v. Cherokee Aviation Corp.*, 660 F.2d 1123 (6th Cir.1981).

The defendants allege that an anonymous representative from S & R called an unnamed employee of Ishmael's on an unspecified date and allegedly stated that S & R would only sell Ishmael Trivial Pursuit games as part of a "larger package".[10] Fed.R.Civ.Pr. 56(e) makes it clear that the party opposing a motion for summary judgment cannot rest upon the mere allegations of his pleading; he must come forward with admissible evidence or affidavits

based on personal knowledge to demonstrate a triable issue of fact.

■ The allegation that a tying arrangement exists, supported only by inadmissible hearsay evidence, does not meet the requirements of Rule 56(e). No affidavit by the unnamed employee was submitted by the defendants, although the defendants had ample time to procure such an affidavit and ample notice that such an affidavit (or admissible evidence) should have been forthcoming. (*See, eg.*, DE # 54; p. 4).

### c. Price-Fixing

The defendants allege that there exists a price-fixing scheme between Horn Abbot and S & R whereby Horn Abbot has the right to approve the prices of the games which S & R sells. This alleged price-fixing arrangement is purportedly contained in the exclusive license agreement. (TR. pp. 37–38).

The Court has read and examined the exclusive license agreement submitted at the hearing in this cause. There is no provision contained therein which even remotely suggests that Horn Abbot has the right to approve prices.

### IV. "Genuine" "Parallel" or "Grey Market" Goods

Notwithstanding their other defenses and claims, the defendants mainly rely on their argument that the exclusive licensee of a trademark can not prevent the importation and sale in the United States of identical goods originating outside the United States from the foreign licensor. Only one court in this district has published a decision on this issue [11], however, that ruling does not apply to the case at bar for the reasons enumerated herein.

---

**10.** Defendants also allege that *"if* the parts included in plaintiff's version of the Trivial Pursuit-brand board game are not the patented, trademarked and/or copyrighted supplies, there exists a firm *probability* that Horn Abbot, Ltd. is itself guilty of tying unprotected supplies with a patented product..." (emphasis added). As de-

fendants are aware, this allegation is pure conjecture unsupported by affidavit, extrinsic evidence or the record in this cause.

**11.** *Parfums Stern, Inc. v. United States Customs Service,* 575 F.Supp. 416 (S.D.Fla.1983).

The precise legal issue before the Court may be stated as: Whether the exclusive licensee of trademark rights throughout the United States has the right to exclude from importation and sale in the United States identical goods originating outside the United States from the foreign licensor and imported into the United States by a third party, where the licensor is itself prohibited from importing and selling those goods in the United States? A review of the existing case law compels this Court to answer in the affirmative.

The notion that a trademark owner in this country may prohibit the importation and sale in the United States, of identical goods (usually called "parallel" or "grey market goods") purchased abroad is based on the principle of territoriality. This principle evolved from a series of cases beginning with *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923). In that case, the plaintiff, a New York corporation purchased a French company's entire United States' business for face powder, including the United States' registered trademark "Java". The face powder sold by the plaintiff was made by the French company in France but packed in the United States by the plaintiff. The defendant purchased the face powder on the open market in Europe, imported the face powder in its original boxes and resold the face powder in the United States.

In ruling that the plaintiff could bar the importation and resale in the United States of the French face powder, the Supreme Court stated:

> It is said that the trademark here is that of the French house and truly indicates the origin of the goods. But that is not accurate. It is the trademark of the plaintiff *only* in the United States and indicates in law, and, it is found, by public understanding, that the goods come from the plaintiff although not made by it.... It stakes the reputation of the plaintiff upon the character of the goods. (emphasis added).

*Id.* at 692, 43 S.Ct. at 245. *See also, Perry v. American Hecolite Denture Corp.*, 78 F.2d 556 (8th Cir.1935). Recently, courts addressing the issue have relied on this principle of territoriality in ruling that the owner of United States' trademarks may bar importation and sale in the United States of "genuine" or identical goods manufactured abroad. *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 548 F.Supp. 1063 (E.D.N.Y.1982); *Osawa & Co. v. B & H Photo*, 589 F.Supp. 1163 (S.D.N.Y.1984).

In *Osawa*, the district court emphasized the notion of the territoriality of trademarks and the need for protecting them. Judge Leval reasoned that the essential function of a trademark is

> to symbolize the domestic good will of the domestic mark-holder so that the consuming public may rely with an expectation of consistency on the domestic reputation earned for the mark by its owner, and the owner of the mark may be confident that his goodwill and reputation (the value of the mark) will not be injured through the use of the mark by others in domestic commerce.

589 F.Supp. at 1171–1172. In other words then, a trademark represents the local or domestic goodwill of the owner of the national mark. Identical goods imported from another country are apt to confuse domestic buyers of the goods as to their origin. If the foreign goods are damaged, or are without a warranty, or are not of the same quality as the domestic goods, the goodwill and reputation of the domestic owner of the mark is injured.

This principle of territoriality plays an important part in the case at bar. S & R has made some changes, albeit minor ones, in the questions and answers used in conjunction with the Trivial Pursuit games it manufactures. These changes were deemed necessary to promote the goodwill of S & R, who is a manufacturer of family games. Games imported from Canada can irreparably damage S & R's image and reputation, since United States consumers associate the "Trivial Pursuit" trademark with S & R.

Horn Abbot has sold its business and trademarks in this country which relate to

Trivial Pursuit games to S & R. Horn Abbot itself is precluded from selling Trivial Pursuit-brand games in the United States in competition with S & R. The facts of the instant suit fall squarely within the principles of *Bourjois* and its progeny. A fortiori, S & R may legally bar the importation and sale in the United States of Trivial Pursuit games manufactured in Canada.

This Court is aware that a minority of courts have ruled to the contrary,[12] however, those cases are inapplicable here. The only published opinion is *Parfums Stern*.[13] There, the plaintiff corporation sought a preliminary injunction against the United States Customs Service, to enjoin Customs from allowing the importation into the United States of goods manufactured by the plaintiff's subsidiary corporations abroad and imported by persons other than the plaintiff's authorized distributors. In denying the preliminary injunction, Judge Aronowitz reasoned that where the holder of the domestic trademark was merely a cog or entity in a single international enterprise, "so interrelated amongst the individuals, corporate entities and structure"[14] which were all part of that international conglomerate, there was no basis for protecting the domestic goodwill of the plaintiff. In other words, *Bourjois* did not apply to that situation.

Seizing on this language in *Parfums Stern*, the defendants have attempted to demonstrate that S & R and Horn Abbot are part of an "amoeba-like structure" as described by Judge Aronowitz. Viewing the facts in the light most favorable to the defendants, no such interrelationship was established. The plaintiff has licensed others to manufacture Trivial Pursuit games for the United States' market. There is no allegation and no evidence that the games manufactured for S & R are sold in Canada or put in the stream of commerce there.

There is no evidence (by affidavit or otherwise) that more than an arm's-length relationship exists between S & R and Horn Abbot. Absent those facts, no international interrelationship of the kind described in *Parfums Stern* can exist.

There being no genuine issue of material fact requiring resolution, and the plaintiff being entitled to judgment as a matter of law, summary judgment in favor of the plaintiff is appropriate at this time on the issue of liability.

### REQUESTED RELIEF

#### I. *Injunction*

The plaintiff has requested that the defendants be permanently enjoined from infringing its trademarks, copyrights and patents. Mr. Ishmael stated at the hearing in this cause that he has and intends to continue to sell in the United States Trivial Pursuit-brand games imported from Canada.

Injunctions against infringement are authorized by statute; 17 U.S.C. § 502; 35 U.S.C. § 283; 15 U.S.C. § 1116. The plaintiff has shown that the sale of Canadian Trivial Pursuit-brand games in this country will irreparably damage its name and reputation; that it is losing valuable advertising clout; and that it has no adequate legal remedy. Accordingly, an injunction against the defendants should be entered, permanently enjoining them from importing and selling Canadian Trivial Pursuit-brand games in the United States for as long as the plaintiff is the owner of the registered trademarks, copyrights and patents in this country.

#### II. *Damages*

The plaintiff neither offered nor presented any proof as to damages. Therefore, a trial on the issue of damages will be held.

Accordingly, it is

---

**12.** *Parfums Stern, Inc. v. United States Customs Service,* 575 F.Supp. 416 (S.D.Fla.1983); *Coalition to Preserve the Integrity of American Trademarks v. United States of America,* 598 F.Supp. 844, Case No. 84–0390 (D.C.D.C.1984).

**13.** *Supra,* at n. 12.

**14.** *Id.* at 420.

**30**

ORDERED and ADJUDGED:

1. That plaintiff's Motion for Summary Judgment (DE # 20) is granted in part and denied in part.

2. That Summary Judgment on the issue of liability is granted in favor of the plaintiff and against all three (3) defendants for the reasons discussed herein.

3. A permanent injunction is granted, beginning immediately, within the parameters set forth above.

4. Summary Judgment on the issue of damages is denied.

5. The following pending motions are deemed moot and are therefore denied:

    a. Plaintiff's Motion for Preliminary Injunction (DE # 20).

    b. Plaintiff's Motion for Temporary Restraining Order (DE # 33).

    c. Plaintiff's Motion to Strike Counterclaim (DE # 60).

    d. Plaintiff's further Motion for Summary Judgment (DE # 78).

    e. Defendants' Motion for Extension of Time or to Strike (DE # 81).