**The DIAL CORPORATION, Plaintiff,**

v.

**ENCINA CORPORATION, a Florida corporation, and Stanley Smith, Defendants.**

No. 86–8177–CIV.

United States District Court, S.D. Florida, N.D.

Sept. 9, 1986.

Peter W. Homer, Greer, Homer, Cope & Bonner, P.A., Miami, Fla., for plaintiff.

Patricia E. Cowart, Ruden, Barnett, McClosky, Schuster & Russell, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the court upon the motion of the defendants, Encina Corporation and Stanley Smith, to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted.

The instant action concerns the importation, distribution and sale of what are commonly known as "grey market" goods. Grey market goods are goods made by a foreign manufacturer, "legitimately sold abroad under a particular trademark and are imported into the United States and sold in competition with goods of the owner of [the United States] trademark rights in the identical mark." *Vivitar Corporation v. United States,* 761 F.2d 1552, 1555 (F.Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986).

### FACTS

The plaintiff, the Dial Corporation (Dial Corporation), filed this action for injunctive relief and damages against the defendants for violations of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), and the Tariff Act of 1920, 19 U.S.C. § 1526.

Specifically, Dial Corporation alleges that it manufactures and sells an antibacterial deodorant soap which is sold under the registered trademark "DIAL." Dial soap has been marketed since 1947, and has been widely advertised as containing certain antibacterial qualities. Dial Corporation considers its product, not surprisingly, to be "a consistently high quality product, [which has] resulted in a reputation for quality, and [has] produced substantial consumer loyalty and good will which is essential to the continued commercial success of Dial soap." Plaintiff's Complaint at ¶ 13. Dial Corporation further alleges that each license it has sold identifies a specific geographical region or territory in which the soap may be sold and that "none of the licenses include the right to introduce the product into United States Commerce." Plaintiff's Complaint at ¶ 13.

Dial Corporation seeks to enjoin the defendants (the Encina Corporation and its president and chief executive officer) from marketing and selling to retailers in the United States, soap which bears the name "DIAL." Dial Corporation alleges that the soap the defendants are selling to United States retailers was not manufactured in the United States, but was instead manufactured in Cyprus, Greece, by the Allied Cosmetic Industries, Ltd., (ACI), under a license from a Dial Corporation subsidiary. Dial Corporation further claims that as with all its licenses, the licensee is granted only a limited geographic area in which the licensee may sell the soap and this area does not include the United States.

The Dial soap manufactured by ACI in Cyprus allegedly has a different chemical composition from the American Dial soap. The Cyprus soap is alleged to have a different fragrance and is alleged to be lacking the active ingredient which makes American Dial soap a deodorant soap. Additionally, the soap manufactured in Cyprus is allegedly not properly labeled under Food and Drug Administration requirements. Dial Corporation fears that the trademark "DIAL" which appears on the soap manufactured in Cyprus will confuse American consumers who are accustomed to buying American Dial soap.

### MOTION TO DISMISS

The defendants have filed the instant motion seeking to have the suit dismissed on the grounds that Dial Corporation lacks standing, has failed to state a cause of action under the Lanham Act, and has failed to state a cause of action under the Tariff Act.

### STANDING

█ The defendants challenge the plaintiff's standing to bring this action and rely on the plaintiff's failure to state in its

complaint that the plaintiff is the "owner" of the registered trademark "DIAL" soap. The plaintiff, Dial Corporation, responds to this challenge by pointing to the numerous allegations in the complaint which indicate that Dial Corporation "manufactures, sells, and promotes throughout the United States an antibacterial deodorant soap under the trademark 'Dial'...." Plaintiff's Response at 5. The court is satisfied, at this juncture, that the plaintiff has pled sufficient factual allegations to place the defendants on notice that this is a trademark action brought by the proper party to bring the suit.

While it may be true that under 15 U.S.C. § 1114, ownership of the registered mark is an element of the case which must ultimately be proved, the plaintiff's case cannot be dismissed on a 12(b)(6) motion for failure to perfectly plead every element of every claim.[1] This has long been the rule in federal practice. *See* Rule 1, Federal Rules of Civil Procedure (The Federal Rules "shall be construed to secure the just, speedy and inexpensive determination of every action."); Rule 8, Federal Rules of Civil Procedure ("All pleadings shall be construed as to do substantial justice."); *See also* 5 Wright & Miller, Civil Practice & Procedure §§ 1202, 1215–1226 and *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ Additionally, the court notes "that a nonowner of a trademark may maintain an action under the Lanham Act," 15 U.S.C. § 1125(a). *FRA S.p.A. v. Surg-o-Flex of America, Inc.*, 415 F.Supp. 421 (1976) (*citing Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137 (5th Cir.1972) (exclusive distributor, not necessarily the owner, may bring suit)). Therefore, Dial Corporation's failure to specifically plead ownership in its complaint would not, in any event, constitute grounds for dismissal of claims under 15 U.S.C. § 1125(a).[2]

The court concludes that the plaintiff has adequately met the standing requirements for its claims and has provided the defendants with adequate notice of the bases for this suit. The defendants have not persuaded the court "that the plaintiff can prove no set of facts in support of [its] claim which would entitle [the plaintiff] to relief...." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. Accordingly, the defendants' motion to dismiss, on the basis of standing, is DENIED.

## LANHAM ACT CLAIMS

■ The defendants also seek dismissal of counts I and II, claims brought pursuant to the Lanham Act, on the ground that sections 1114 and 1125 "only give rights to a rightful owner of trademark rights and may not be extended to allow one licensee to bar another licensee's right to manufacture and sell genuine products." Defendants' Motion to Dismiss at 2. The thrust of the defendants' argument (disregarding challenges to lack of ownership), is that because "the soap was rightfully manufac-

---

**1.** Apparently the defendants have overlooked the fact that the plaintiff has alleged in count III of its complaint (Tariff Act Claim) that the Dial Corporation is the owner of the registered trademark Dial soap. Had the defendants read the plaintiff's complaint more carefully, the need to include standing as a basis for dismissal would have been obviated. The court reminds the defendants of the proscription against dilatory practices and the consequences which such actions bring. *See* Rule 11, Federal Rules of Civil Procedure.

**2.** 15 U.S.C. § 1125(a) provides:

False designations of origin and false descriptions forbidden

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

tured by ACI in Cyprus, Greece, pursuant to a license agreement by Armour Dial ...," the plaintiff cannot state a claim under either section 1114 or section 1125, against persons who import such products into the United States. Defendants' Motion to Dismiss at 2–3. The defendants dispute the plaintiff's right to bring a trademark infringement action for what the defendants contend is nothing more than an "unauthorized sale of genuine goods." Defendants' Motion to Dismiss at 4.

The plaintiff seeks to prevail on its Lanham Act claims under the theory of "territoriality" which was set forth by Justice Holmes in *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923).[3] *Katzel* concerned an American company which purchased a French company's product (face powder), and the exclusive right to market the product in the United States. The French manufacturer continued to manufacture and sell the product in France.

The defendant, in *Katzel*, seizing upon favorable foreign currency exchange rates, imported large quantities of the face powder into the United States and sold the powder in the "French boxes which closely resemble[d] those used by the plaintiff...." *Id.* 43 S.Ct. at 245. The Court held that the plaintiff's rights had been infringed and stated that the product sold by the plaintiff, in the United States, which bore the United States trademark, "stake[d] the reputation of the plaintiff upon the character of the goods." *Id.* The Court found that this reputation could be injured by the importation of even identical French face powder bought legally by the defendant abroad. *Id.*

The territoriality principle has continued to form the doctrinal framework for sustaining claims brought under sections 1114 and 1125 of Chapter 15 of the United States Code (Lanham Act). *See eg. Selchow & Righter v. Goldex Corp.*, 612 F.Supp. 19, 28 (S.D.Fla.1985); *Weil Ceramics & Glass, Inc. v. Dash*, 618 F.Supp. 700, 710 (D.C.N.J.1985); *Osawa & Co. v. B & H Photo*, 589 F.Supp. 1163, 1171–72 (S.D.N.Y. 1984).

The defendants rely on *Parfums Stern, Inc. v. United States*, 575 F.Supp. 416 (S.D. Fla.1983), as support for their contention that a domestic corporation who licenses the manufacture of its product and use of its trademark abroad cannot prevent the importation and sale in the United States of the foreign product. The court finds that the facts of *Parfums Stern* are distinguishable from the case at bar and, consequently, *Parfums Stern* does not assist the defendants' argument. In *Parfums Stern*, evidence was put forth to demonstrate that the plaintiff was merely a "cog or entity in ... a single international enterprise, operating through an amoeba-like structure ...," and that the importation and sale of the plaintiff's product abroad was controlled by "criteria developed by the enterprise." *Id.* at 418. That situation has not yet been demonstrated to exist with the Dial Corporation.

Finally, *Parfums Stern* is limited by its own terms, because in *Parfums Stern* there was "no showing that the public would be harmed or [was] being harmed by

---

**3.** Under the *territoriality principle*, "the protection which a trademark receives in a particular country depends upon the law of that country." *Weil Ceramics*, 618 F.Supp. at 705. The significance of registering a mark in another country does not affect the rights of the domestic markholder. "Thus, even if a trademark correctly identified the manufacturer of the goods, it would still be an infringing product if it deceived the public into believing that the domestic markholder's goodwill stood behind the product." *Id.*

The *territoriality principle* can be distinguished from its obverse, the *universality principle*, in that the latter dictated that imported merchandise which bore a genuine foreign trademark could not be considered to be an infringing product in the United States. This was so even when the United States distributor had the exclusive right to use the mark and to distribute the foreign goods in the United States. So long as the goods were genuine, it was believed that the public would not "deceived" as to the source of origin, which was deemed to be the manufacturer and not the distributor who held the domestic trademark. *Id.; See also Appollinaris Co. Ltd. v. Scherer*, 27 F. 18 (C.C.S.D. N.Y.1886).

the importation of [the] ... 'grey market' goods." *Id.* at 421. The formula for the foreign perfume was apparently the same as that of the domestically marketed variety. In contrast, in the case currently before this court, the plaintiff has alleged that the Cyprus soap is made without the active ingredient which consumers have come to rely on when using American Dial soap.

The court concludes, on the basis of the foregoing discussion, that the motion of the defendants to dismiss the claims brought under the Lanham Act, 15 U.S.C. § 1114 and § 1125, is not well-founded and is, therefore, DENIED.

## TARIFF ACT CLAIM

In count III of its complaint, Dial Corporation seeks relief for violation of the Tariff Act of 1930, 19 U.S.C. § 1526. Section 1526(a) provides:

> Except as provided in subsection (d) of this section, it shall be unlawful to import into the United States any merchandise of foreign manufacture if such manufacture, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a corporation or association created or organized within the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States, ... and if a copy of the certificate of registration of such trademark is filed with the Secretary of the Treasury, ... unless written consent of the owner of such trademark is produced at the time of making entry.

19 U.S.C. § 1526(a)(1980).

Dial Corporation, the alleged owner of the registered trademark for Dial soap, seeks to recover damages for the defendants' past actions in violation of this stat-ute and injunctive relief to prevent the defendants from any future actions violative of 19 U.S.C. § 1526(a).[4] The defendants seek to avoid application of the statute by citing certain Customs Service Regulations. The Regulations are contained in 19 C.F.R. § 133.21(c)(1)–(3) (1985).

The current regulations provide in relevant part:

> (b) *Identical trademark.* Foreign made articles bearing a trademark identical with one owned and recorded by a citizen of the United States or a corporation or association created or organized within the United States are subject to seizure and forfeiture as prohibited importations.

> (c) *Restrictions not applicable.* The restrictions set forth in paragraphs (a) and (b) of this section do not apply to imported articles when:

>> (1) Both the foreign and the U.S. trademark or trade name are owned by the same person or business entity;

>> (2) The foreign and domestic trademark or trade name owners are parent and subsidiary companies or are otherwise subject to common ownership or control. ...

The defendants appear to be exempted from coverage under the Regulations, and the Customs Service may choose, on the basis of their Regulations, not to automatically exclude "grey market" products from entry into the United States. *See Vivitar*, 761 F.2d at 1555. It is a far different matter, to conclude, as do the defendants, that the Regulations "bar Plaintiff from bringing any action." Defendants' Response at 5.

The very case upon which the defendants rely, *Vivitar Corporation v. United*

---

4. 19 U.S.C. § 1526(c) provides for injunctive relief and damages for violations of subsection (a):

   Injunction and damages
   (c) Any person dealing in any such merchandise may be enjoined from dealing therein, within the United States or may be re-quired to export or destroy such merchandise or to remove or obliterate such trademark and shall be liable for the same damages and profits provided for wrongful use of a trademark, under the provisions of sections 81 to 109 of Title 15.

*States,* 761 F.2d at 1569, states exactly the opposite:

> Regardless of whether Customs excludes or does not exclude particular imports, the courts must independently determine whether the importation is or is not precluded by the statute.... Similarly, Customs' decision, as expressed in the subject regulations, not to exclude grey market goods does not control on the questions of whether particular goods should or should not be excluded. A trademark owner is entitled ... to pursue private remedies against the importer and, if successful, to have such grey market goods excluded.

*Id.* (footnotes omitted).

■ More recently, the Second Circuit has followed *Vivitar,* with respect to private party actions. In *Olympus Corporation v. United States,* 792 F.2d 315 (2nd Cir.1986), the court stated unequivocally that "Customs' interpretation of the statute does not limit the reach of protection of section 526; it only limits Customs' obligation to enforce the section by excluding goods." *Id.* at 320. The markholder has an independent right of action against the importer for violation of section 526(e), even in the absence of Customs' decision not to exclude the goods at the point of entry. *Id. See also Premier Dental Products Co. v. Darby Dental Supply Co., Inc.,* 794 F.2d 850 (3rd Cir.1986).[5]

Accordingly, the motion of the defendants, to dismiss the plaintiff's claim brought pursuant to the Tariff Act of 1930, 19 U.S.C. § 1526, is DENIED.

5. The court is mindful of the recent decision in *Coalition to Preserve the Integrity v. United States,* 790 F.2d 903 (D.C.Cir.1986), in which the Court of Appeals for the District of Columbia Circuit held the subject Customs Regulations invalid. The court also acknowledges the opinions in *Vivitar Corp.,* 761 F.2d at 1570, and *Olympus Corp.,* 792 F.2d at 315, in which the Regulations were upheld.

The United States Customs Service is not a defendant in this action. Furthermore, this case does not arise out of an effort by the plaintiff to force Customs to seize any items, pursuant to Customs Regulations. Rather, this is a private action brought under § 526. The issue of whether the Customs Regulations are valid or invalid is not currently before this court. The court, accordingly, makes no determination as to the validity or invalidity of the Regulations.