**POLO FASHIONS INC., Plaintiff,**

v.

**MAGIC TRIMMINGS, INC.; Arthur Abramson; and Maria Mataylo, Defendants.**

**No. 83–0261–Civ–SMA.**

United States District Court, S.D. Florida.

April 24, 1984.

correct that ERISA precludes enforcement of the State's levy in the circumstances of this case

...." 103 S.Ct. at 2855.

Robert W. Wells, Miami, Fla., for plaintiff.

Barry Halpern, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW [1]

ARONOVITZ, District Judge.

## I.

### FINDINGS OF FACT

#### A. *The Parties.*

1. The Plaintiff Polo Fashions Inc. (hereinafter "Polo") is a New York corporation having an office and place of business at 40 West 55th Street, New York, New York 10019.

2. The Defendant, Magic Trimmings, Inc. (hereinafter "Defendant Magic Trimmings") is a Florida corporation having an office and place of business at 1071 East 16th Street, Hialeah, Florida.

3. The Defendant Arthur Abramson (hereinafter "Defendant Abramson") is a resident and a citizen of the State of Florida and is an officer and director of Magic Trimmings, Inc. with an office and place of business at the same address.

4. The Defendant Maria Mataylo (hereinafter "Defendant Mataylo") is a resident and citizen of the State of Florida and is an officer and director of Magic Trimmings, Inc. having an office and place of business at the same address.

#### B. *Jurisdiction and Venue.*

5. This action arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 et seq., particularly pursuant to 15 U.S.C. §§ 1114(1) and 1125(a), and, under the common law of the State of Florida. This court has jurisdiction over the subject matter of this claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Jurisdiction is proper over Defendants pursuant to the laws of the State of Florida and Rule 4 of the Federal Rules of Civil Procedure.

#### C. *The Business of the Parties.*

6. Plaintiff Polo is a world famous fashion house which under the direction of its world famous designer Ralph Lauren styles, manufacturers and sells both directly and through related companies and licensees, diverse articles of men's and women's wearing apparel identified by the trademarks and tradenames POLO, RALPH LAUREN, POLO BY RALPH LAUREN and a fanciful representation of a polo player on a horse (the "Polo Player Symbol") both individually and as composite trademarks, including a composite mark consisting of the mark RALPH LAUREN in combination with the Polo Player Symbol (the "Ralph Lauren Logo"). These trademarks are hereinafter collectively referred to as the "Polo Trademarks".

7. Defendants are engaged in the clothing manufacturing business and specifically are involved in the placing of embroidery on garments and in silkscreening designs onto garments at their facility in Hialeah, Florida. In the process of conducting embroidery, Defendants utilize several twelve-head embroidery machines controlled by paper tape drives and use silkscreening apparatus which are hand-operated. The Defendants' gross volume of sales in the year 1983 was approximately $300,000, constituting primarily the sale of embroidery and silkscreen printing on garments.

#### D. *Background.*

8. Polo, following the conduct of an investigation, submitted an ex parte Motion for Temporary Restraining Order duly supported by affidavits. An order was issued by the Court on February 2, 1983, (Docket No. 7) authorizing an inspection of Defendants' premises coupled with service of process and service of an Order setting a hearing for Preliminary Injunction. Subsequently, the Court entered its Order authorizing seizure of counterfeit materials

---

1. This Court held an evidentiary hearing/trial on the issue of damages. Having examined the exhibits introduced into evidence and having heard all of the testimony adduced as well as closing argument by attorneys for plaintiff and defendants, these Findings of Fact and Conclusions of Law are hereby entered thereon.

found at Defendants' premises. (Docket No. 9)

9. A Preliminary Injunction Order Upon Consent was entered on February 8, 1983, (Docket No. 22).

10. This court has previously granted Polo's Motion for Summary Judgment on Liability (Docket No. 41) in its Order on Pretrial Conference dated February 6, 1984, (Docket No. 54). At present Polo's U.S. trademark registrations include among others: registration number 984,005 of May 14, 1974 for the Ralph Lauren Logo trademark for diverse items of wearing apparel and registration number 1,050,722 of October 19, 1976 for the Ralph Lauren Logo trademark for diverse items of women's apparel. The foregoing registrations are all valid and subsisting.

### E. *Damages.*

11. The issues tried to the Court include Polo's right to injunctive relief pursuant to 15 U.S.C. § 1116 and Polo's right to monetary relief pursuant to 15 U.S.C. § 1117 including calculation of Defendants' profits to be awarded to Polo; a determination of whether there should be a trebling of the monetary award made to Polo; a determination of costs; and a determination of whether this is an "exceptional case" wherein the Court may award a reasonable attorneys' fee to Polo.

12. The Court finds that in the two year period prior to February 1983, Defendants acquired not one tape, as a sample, but seven computer tapes which were used to drive Defendants' multihead embroidery machines which operate at a high rate of speed and with great precision and which were used to embroider counterfeits of the Polo Player Symbol. The Court finds that the acquisition of these tapes demonstrates an intentional plan by Defendants to infringe the Polo Trademarks.

13. The Defendants had in their possession, at the time process was served on February 2, 1983, not only tapes for embroidery of Polo's trademarks but also tapes capable of producing embroidery of numerous other designer trademarks including: Sergio Valenti, Gloria Vanderbilt, Jordache, JouJou, Yves St. Laurent, Givenchy, Sasson, Gucci, Christian Dior, Pac Man, Fox (J.C.P.), Mickey Mouse, Swan (Gloria Vanderbilt), Rabbit Head (Playboy), Pierre Cardin name, and Pierre Cardin letter "P". At the time process was served upon Defendants, the multihead embroidery machines were engaged in the process of embroidering the Jordache logo upon garments and, in another area of Defendants' premises, Defendants were engaged in the process of placing Adidas designs on garments using their silkscreen apparatus. The Court finds from this evidence that Defendants had no regard for the trademark rights of the rightful owner of the trademarks in question, including Plaintiff's Polo Player Symbol and the other trademark owners not Plaintiffs in this action. The Court finds that the Defendants were guilty of bad faith and willful and malicious infringement of the Polo Trademarks and the trademarks of others.

14. Defendant Abramson testified that Magic Trimmings did not provide embroidery of the Polo Player Symbol to one of its customers, Allar Enterprises, Inc. The testimony of Allar Enterprises, Inc., however, establishes that Defendants embroidered the Polo Player Symbol on approximately 1,000 shirts for Allar Enterprises, Inc. The Court finds the Defendants' lack of candor under oath in failing to have testified as to supplying Allar Enterprises, Inc. with counterfeit embroidery is further evidence of the Defendants bad faith and intentional infringement.

15. The Court finds that the sole purpose of Mishigoss, Inc., a customer of Defendants, was to produce garments bearing counterfeits of Polo's registered trademarks, including embroidery of the Polo Player Symbol. Invoices from Magic Trimmings to Mishigoss, Inc. indicate that Magic Trimmings, Inc. conducted embroidery for Mishigoss, Inc. The embroidery included shirts styled 4009 which Mishigoss, Inc. has identified as counterfeit POLO BY RALPH LAUREN interlock shirts and

upon sweaters. The Court finds that since Mishigoss, Inc. only manufactured shirts bearing one or more of the Polo Trademarks, the work done by Magic Trimmings, Inc. for Mishigoss, Inc. necessarily involved embroidery of the Polo Player Symbol.

16. Both the Mishigoss, Inc. invoices and the Allar Enterprises, Inc. invoices show embroidery of "style x." The Court finds that Magic Trimmings, Inc.'s style x is embroidery of the Polo Player Symbol.

17. Defendants have testified that their only embroidery of the Polo Player Symbol was on eight garments picked up by a customer, Paris 2000, for which Paris 2000 never paid. Former U.S. Marshal Arkadis Karb, however, testified that while serving process on Paris 2000, Inc. in other trademark litigation, he observed approximately 4,500 garments at the premises of Paris 2000 bearing the label POLO BY RALPH LAUREN and embroidery of the Polo Player Symbol. By the time Polo initiated action against Paris 2000, the garments had been removed from the Paris 2000 facility and only a small portion of the total garments observed by Marshal Karb were ever recovered.

18. In a storage area at Defendants' premises, approximately 250 dress fronts were found all bearing the Plaintiff's Polo Player Symbol embroidered on the chest region thereof.

19. Defendants' embroidery of the Polo Player Symbol upon the 250 dress fronts is explained by Defendants to be an "experiment." An examination of the dress fronts reveals that on each garment the Polo Player Symbol embroidery appears in the appropriate place in the chest region of the garment. The evidence establishes that the claimed "experiment" took approximately 4 hours to perform. An experiment could logically be performed on one or two garments in a brief period to determine whether the machine was properly functioning. The expenditure of 4 hours time and the effort required in terms of sheer cost of labor and material to the Defendants to produce 250 dress fronts does not support the claim that it was an experiment. The Court finds that the testimony

offered by Defendant Abramson is not worthy of belief. It is simply incredible and it does not form any basis or foundation for acceptance by this Court as an explanation for Defendants' use of the tapes of the Polo Player Symbol. The existence of the 250 dress fronts at Defendants' premises demonstrates that the Defendants embroidered the Polo Player Symbol in volume.

20. At the time process was served upon the Defendants, one of the investigators for Polo requested from the Defendants' operations supervisor, Luis Benevides, information concerning the last date upon which production of embroidery of the Polo Player Symbol had been conducted. The operations supervisor stated, "about two weeks ago." When further inquiry was made concerning the whereabouts of invoices reflecting the production of such embroidery, the operations supervisor stated, "he would be crazy to put anything like that on an invoice." The Court finds that these admissions indicate that Defendants were conducting a volume business in the embroidery of the Polo Player Symbol and further finds that accurate and reliable records concerning the volume of this embroidery are not available.

21. The Court finds that based upon the testimony and documentary evidence and the reasonable inferences and deductions to be drawn therefrom that Defendants have sold the following quantities of embroidery of counterfeits of the Polo Player Symbol to the individuals designated:

| Customer | Quantity | Description |
|---|---|---|
| Paris 2000 | 8 | Shirts with Polo Player Symbol embroidery |
| Allar Enterprises, Inc. | 1,000 | Shirts with Polo Player Symbol embroidery, Style "x" |
| Mishigoss, Inc. | 928 | Computer style embroidery, Style "x" |
| Mishigoss, Inc. | 168 | Fronts, Style "x" |
| Mishigoss, Inc. | 201 | Sweaters, Style "x" embroidery |
| Mishigoss, Inc. | 652 | Poly fronts with Style "x" 4009 |
| Paris 2000 | 4,500 | Shirts with Polo Player Symbol embroidery |
| TOTAL | 7,457 | |

22. The Court finds from the evidence that it is reasonable to infer and deduce that the average charge of Defendants per each embroidery of the Polo Player Symbol sold was 50 cents ($.50).

23. The Court finds that the Defendants have offered no proof whatsoever concerning their costs or deductions claimed as a result of their embroidery operations involving embroidery of the Polo Player Symbol.

24. The Court finds that the entire business operation of Magic Trimmings, as reflected by the evidence before the Court, shows a willful perpetration of a fraud and the intentional infringement of registered trademark rights as it relates to this Plaintiff and as it relates to others who are not plaintiffs here in a manner and in a method that is a gross violation and one which cries out for absolution.

25. The Court finds this to be an exceptional case and considers it one which probably cannot be duplicated in terms of the number of trademark abuses and excesses that are shown to have occurred or existed at the premises of the Defendants. From the testimony and documentary evidence presented, the Court finds the conduct of the Defendants here borders and verges upon criminal offenses in terms of the fraud and the other acts that have been perpetrated. If there ever has been an exceptional case, this is it and the awards to be made to the Plaintiff herein are justified by the circumstances of this case.

26. The Court makes the same findings with respect to each Defendant, Magic Trimmings and Arthur Abramson; however, the Court specifically finds that no evidence has been adduced or established that would support the entry of judgment or such findings with regard to Co-defendant, Maria Mataylo.

## II.

## CONCLUSIONS OF LAW

27. The statutory basis for Polo's right to monetary relief is contained in Section 35 of The Trademark Act of 1946, 15 U.S.C. § 1117. This section governs the award of monetary relief in cases of trademark infringement and unfair competition and provides:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

This section applies to causes of action for unfair competition under 15 U.S.C. § 1125(a) as well as to causes of action for infringement of registered trademarks. *Winterland Concessions Co. v. Creative Screen Design, Ltd.*, 214 U.S.P.Q. 188 (N.D.Ill.1981).

28. There are strong public policy considerations for the strict enforcement of trademark laws. These laws exist to protect both the businessman who has striven to develop his good will and to protect the consumer against "spurious and falsely marked goods." *Vuitton Et Fils, S.A. v.*

*Crown Handbags,* 492 F.Supp. 1071, 1075 (S.D.N.Y.1979), *aff'd,* 622 F.2d 577 (2d Cir. 1980). An honest businessman has a duty to select a different design or name than one registered to another and the Court should suspect the motives of one who uses a mark identical to the successful registered mark of another. *See* 492 F.Supp. at 1075. In the United States today, counterfeiting of registered trademarks has reached "epidemic proportions." *Montres Rolex, S.A. v. Snyder,* 718 F.2d 524, 528 (2d Cir.1983).

29. When a defendant is guilty of bad faith or willful infringement, an award to the plaintiff of defendant's profits is appropriate. *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686 (2d Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Maltina Corp. v. Cawy Bottling Company,* 613 F.2d 582 (5th Cir. 1980). In *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656 (2d Cir.1970), the Court noted that an award of profits is appropriate against a defendant who has exhibited:

[A]n aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the good will plaintiff had sought to foster could safely be treated as a nullity.

435 F.2d at 662.

■ 30. To recover Defendants' profits, The Lanham Act requires that Polo show Defendants' gross sales of infringing goods. The burden is then on Defendants to demonstrate their costs. *Quaker State Oil Refining Corp. v. Kooltone, Inc.,* 649 F.2d 94, 95 (2d Cir.1981); *Playboy Enterprises, Inc. v. P.K. Sorren Export Co.,* 546 F.Supp. 987 (S.D.Fla.1982). In determining the entitlement to Defendants' profits as an element of monetary relief, the Plaintiff need not demonstrate any actual damages in order to obtain an accounting for profits. *Playboy Enterprises, Inc. v. P.K. Sorren Export Co.,* 546 F.Supp. 987 (S.D.Fla.1982).

■ 31. The Court may award the Plaintiff up to three times the amount of profits made by the Defendants as damages as justice shall require. Such an award is discretionary and may be based on a finding of willfulness. *Playboy Enterprises v. P.K. Sorren Export Co.,* 546 F.Supp. 987, 998 (S.D.Fla.1982).

■ 32. The Court, in its discretion, may award the Plaintiff such sum as it finds just according to the circumstances of the case when the award to the Plaintiff is based upon Defendants' profits and the award of profits is deemed inadequate. 15 U.S.C. § 1117.

■ 33. The prevailing party is entitled to recover its costs in the bringing this action. 15 U.S.C. § 1117, Rule 54(d), Federal Rules of Civil Procedure.

■ 34. In an exceptional case, the court may award attorneys' fees to the plaintiff whose trademark has been infringed. *Playboy Enterprises v. P.K. Sorren Export Co.,* 546 F.Supp. 987, 999 (S.D.Fla. 1982); *Boston Professional Hockey Ass'n., Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

■ 35. In 1975, The Lanham Act was amended for the express purpose of permitting the recovery of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117. Exceptional cases are those where the acts of infringement can be characterized as "malicious, fraudulent, deliberate, or willful." *Playboy Enterprises, Inc. v. Baccarat Clothing Co.,* 216 U.S.P.Q. 1083, 1086, *citing* 1974 U.S.Code Cong. & Ad.News 7132.

■ 36. The evidence presented in this case establishes that it is an "exceptional case" within the meaning of 15 U.S.C. § 1117 and it is therefore appropriate for the Court to make an award of attorneys' fees. This is an exceptional case since the Defendants cannot justify their actions as either a reasonable attempt to develop their own trademark or as the result of any innocent confusion on their part concerning the existence of the Polo Trademarks. The amendments to The Lanham Act were obviously intended and directed towards eliminating such blatant counterfeiting activity as has been conducted by the Defendants herein. *See Playboy Enterprises, Inc. v.*

*Baccarat Clothing Co.*, 216 U.S.P.Q. at 1086 (9th Cir.1982). *Playboy Enterprises v. P.K. Sorren Export Co.*, 546 F.Supp. 987 (S.D.Fla.1982).

37. Based upon the evidence before the Court, Polo has established the basis for an award of monetary relief at least in the minimum of the following elements:

38. *Defendants' Profits.* The Court finds the amount of Defendants' profits to be awarded as damages to the Plaintiff to be calculated upon the sale of 7,457 garments bearing the Polo Player Symbol sold at fifty cents each for profits in the amount of $3,728.50 unreduced by any costs incurred on behalf of Defendants.

39. *Treble Damages.* The Court finds willfulness in the action of Defendants in embroidery of the Polo Player Symbol which obviously has resulted in damage to the Plaintiff. Justice requires that the amount of Defendants' profits awarded to the Plaintiff as damages be trebled in the amount of $11,175.50.

40. *Alternative Award.* The Court alternatively and not additionally specifically determines that the award of profits as damages, under the circumstances of this case, including the trebling thereof, is inadequate and therefore finds a concurrent award of damages equivalent to 4,500 embroidery at fifty cents per embroidery trebled is necessary and required according to the circumstances of this case to compensate the Plaintiff and not as a penalty against the Defendants. Such award shall be considered severally with the other awards made herein and not in addition thereto.

41. *Costs.* As the prevailing party, Polo is entitled to recovery of costs in this action and shall submit its Bill of Costs for the taxation of costs by the clerk.

42. *Attorney's Fee.* In this, an exceptional case, the Court determines an award of a reasonable attorneys' fee is justified and the Court directs that Polo submit affidavits reciting the work done, the time involved and the amount claimed for such work. The Defendants may file an affidavit in opposition within ten days after receipt of such proof submitted by Polo. The Court will then determine the amount of the reasonable attorneys' fee to be awarded.

43. These Findings of Fact and Conclusions of Law are to be considered severally and any finding of fact made which constitutes a conclusion of law is hereby adopted as a conclusion of law and any conclusion of law made which is a finding of fact is hereby adopted as a finding of fact.

44. The Plaintiff, Polo Fashions Inc., is entitled to final judgment incorporating and extending the terms of the Preliminary Injunction heretofore entered and to the award of Defendants' profits as damages, the trebling thereof, additional damages court costs and attorneys' fees as more fully set forth in these Findings of Fact and Conclusions of Law.

### FINAL JUDGMENT

On April 11, 1984, the above cause came on for trial to the Court on the issue of damages, all parties being represented by their attorneys of record herein, and the parties having presented evidence, authorities and argument to the Court, and having closed the evidence on April 11, 1984, and the Court concluding that judgment should be entered for Plaintiff herein in accordance with the Findings of Fact and Conclusions of Law filed heretofore, and the Court having previously entered a Preliminary Injunction Upon Consent and having previously ordered summary judgment in favor of the Plaintiff on the issue of liability, it is

ORDERED, ADJUDGED AND DECREED as between the parties hereto that:

1. Defendants, Arthur Abramson, Magic Trimmings, Inc. and its officers, agents, servants, employees and attorneys, and all persons in active concert and participation with them, be and hereby are permanently restrained and enjoined:

(a) From using the trademarks POLO, RALPH LAUREN, POLO BY

RALPH LAUREN, the Polo Player Symbol, or any marks similar thereto in connection with the sale of any unauthorized goods, or the production of any unauthorized embroidery, or the rendering of any unauthorized services, including, without limitation, distributing or delivering any such goods manufactured, ordered or sold prior to the date of this Order;

(b) From manufacturing, distributing, advertising, promoting, holding for sale or selling any goods, labels, tags, logos, decals, emblems, signs, embroidery, and other forms of markings, any packaging, wrappers, containers or receptacles, and any jacquard cards, catalogs, price lists, promotional materials and the like bearing a copy or colorable imitation of Plaintiff's POLO, RALPH LAUREN, POLO BY RALPH LAUREN, or the Polo Player Symbol trademarks;

(c) From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services, products or embroidery of Defendants are sponsored by, authorized by, or in any way associated with Plaintiff Polo;

(d) From infringing Plaintiff Polo's registered trademarks;

(e) From otherwise unfairly competing with Plaintiff Polo;

(f) From falsely representing themselves as being connected with Plaintiff Polo or sponsored by or associated with Plaintiff Polo;

(g) From using any reproduction, counterfeit, copy, or colorable imitation of the trademarks POLO, RALPH LAUREN, POLO BY RALPH LAUREN, the Polo Player Symbol, or any of the Polo Trademarks in connection with the publicity, promotion, sale, or advertising of goods sold by Defendants including, without limitation, knit shirts or other apparel bearing embroidery or a copy or colorable imitation of Plaintiff Polo's POLO BY RALPH LAUREN or the Polo Player Symbol trademarks;

(h) From affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including embroidery, words or other symbols tending to falsely describe or represent such goods as being those of Plaintiff Polo and from offering such goods in commerce; and

(i) From using any trademark or trade name in connection with the sale of any goods which may be calculated to falsely represent such goods as being connected with, approved by or sponsored by Plaintiff Polo.

2. The Plaintiff, Polo Fashions, Inc., shall recover from the Defendants, Magic Trimmings, Inc. and Arthur Abramson, individually, jointly and severally, the sum of Eleven Thousand One Hundred Seventy-Five and 50/100 dollars ($11,175.50), together with interest at the rate of 10.81 percent from the date hereof compounded annually, plus attorneys' fees to be determined by the Court upon the submission of affidavits, plus all costs of suit herein to be taxed by the Clerk of the Court upon submission of a Bill of Costs within 30 days of the date hereof.

3. The jurisdiction of this Court is retained for purposes of making any further orders necessary or proper for the construction or modification of this judgment, the enforcement thereof and the punishment of any violations thereof, including such orders as are required for the destruction of all counterfeit garments and embroidery tapes seized from the premises of Defendants pursuant to this Court's previous Order.

4. The Plaintiff, Polo Fashions Inc., shall recover no money damages from the Defendant Maria Mataylo, who shall go hence without day.