Blum, Gersen, Dollard & Stream, New York City, for plaintiff; Milton Springut, of counsel.

Vijay Gokhale, New York City, for defendants.

**GUCCI AMERICA, INC., Plaintiff,**

v.

**DART, INC., et al., Defendants.**

**No. 86 Civ. 7377 (LLS).**

United States District Court,
S.D. New York.

June 12, 1989.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

STANTON, District Judge.

Plaintiff, Gucci America, Inc., by change of name from Gucci Shops, Inc. ("Gucci"), is a corporation organized and existing under the laws of the state of New York, having an office and place of business at 685 Fifth Avenue, New York, New York 10022.

Gucci owns and has used the trademarks and trade names GUCCI, various GG logos, the green-red-green Gucci stripe device and the Gucci heraldic crest (collectively referred to as the "Gucci trademarks"), in connection with a line of accessories, including watches, since at least as early as 1967.

Gucci is a fashion leader in leather goods and related fashion accessories. Gucci styles and sells, both directly and through related companies and licensees, diverse articles of men's and women's fashion accessories, including watches. Gucci has a reputation both in the United States and throughout the world for high-quality products sold under the Gucci trademarks, which are recognized by the trade and purchasing public as being associated with items of high style and quality.

Gucci is the owner of the Gucci trademarks, including the green-red-green Gucci

stripe device and of several U.S. Trademark Registrations for the Gucci trademarks, including among others: Registration No. 1,123,224 of July 31, 1979 for the green-red-green Gucci stripe device for various items, including watches (the "Gucci Registration").

The green-red-green Gucci stripe device trademark and the Gucci Registration are both valid, subsisting and in full force and effect.

Gucci uses the green-red-green stripe device on virtually all of its merchandise, including watches, handbags, leather goods, clothing and colognes.

Gucci itself and through related companies establishes and maintains quality and fashion standards for products and services identified by the Gucci trademarks.

Gucci has extensively advertised and promoted its fashion accessories bearing the green-red-green Gucci stripe device trademark.

The sales of Gucci branded products continue to rise each year. During the period 1981 through 1987, Gucci's sale of products bearing one or more of the Gucci trademarks exceeded $400,000,000. Sales of Gucci watch products, at wholesale, were in excess of $41,000,000 in 1986. Sales of watch products bearing the green-red-green Gucci stripe device, also at wholesale, exceeded $9,500,000 in 1986.

The Gucci trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and association with Gucci, and are among the most well-known trademarks in the fashion field.

Gucci primarily sells its products through its own stores in such cities as Beverly Hills and New York, and through authorized franchise operations. Gucci also has exclusive distribution arrangements with various companies for several lines of merchandise. For example, Severin Montres Ltd. ("Severin") of Irvine, California, is the exclusive licensee and sole authorized distributor of watch products under the Gucci trademarks in the United States and worldwide. Severin manufactures this merchandise in Switzerland in accordance with Gucci design specifications and distributes it in the United States under Gucci's authorization.

Gucci's exclusive licensees sell only to selected high quality department and specialty stores such as Saks Fifth Avenue, Bullocks' and Bloomingdales. Before supplying a retail store, an evaluation is made to ascertain whether it meets the Gucci standards of quality. This limited distribution to selected stores is important in maintaining the high quality image associated with merchandise bearing the Gucci trademarks.

Gucci suffers actual harm in lost sales and debasement of its reputation from the sale of counterfeit Gucci goods in the marketplace. Once a consumer buys an inferior quality counterfeit watch and experiences dissatisfaction, that consumer is less likely to buy genuine Gucci merchandise. The consumer believes that other merchandise bearing the Gucci mark will be as inferior as the counterfeit item. Others will be discouraged from acquiring a genuine Gucci because the items have become too commonplace and no longer possess the prestige and status associated with them.

Defendant Suresh Budhrani is the sole owner, operator, and proprietor of defendant Pearl Industries, Inc., an unincorporated entity located at 1182 Broadway in New York, New York (collectively "Pearl Industries"). Pearl Industries has imported watches since 1982.

In December 1985 Pearl Industries imported watches valued at $20,000 bearing the green-red-green Gucci stripe device. The watches were confiscated by the U.S. Customs Service as counterfeit merchandise.

On September 25, 1986 Gucci, following an investigation, obtained an *ex parte* temporary restraining and seizure order authorizing the seizure of counterfeit goods, and records pertaining thereto, against various defendants, including Dart, Inc. ("Dart").

Based upon the declaration of Steven B. Iken, a private investigator, who identified Pearl Industries as Dart's supplier of counterfeit watches, the court entered an order

on September 26, 1986 amending the September 25 order, to include Pearl Industries.

At the time the amended seizure order was served, defendant had in his possession—more than nine months after the confiscation by U.S. Customs—watches bearing the green-red-green Gucci stripe device.

Dart is a retailer of garments, electronics and watches and formerly a defendant in this action. Watches in Dart's possession at the time of execution of this Court's order of September 25, 1986, which Dart had obtained from defendant, are virtually identical in external appearance to the authentic Gucci watches, watch case design and dial face, including the dominant design feature of the green-red-green Gucci stripe device. Although the watches varied from genuine Gucci watches in various minor aspects which a close inspection would disclose, the consumer who encounters the green-red-green Gucci stripe device on the watches would identify them as Gucci watches. Indeed, although the seized watches are not manufactured by or for, or authorized by, Gucci and do not meet Gucci's quality standards, owners of such counterfeit watches frequently bring them to Gucci for repair or return believing them to be genuine Gucci products.

Defendant's records, despite what appear to be some obliterations, disclose substantial importation and sales of the infringing watches (identified by its style numbers 1019, 1021, 1027, 1033 and 1121), in an amount conceded by defendant (in its proposed findings of fact IV.5(a)) to be 2,128 watches. I do not credit Mr. Budhrani's testimony to the contrary on this, or indeed on other points. Dart bought at least 246 of the infringing watches, for resale, from Pearl Industries in August and September, 1986, paying defendant between $8.50 and $9 per watch. Defendant was Dart's only source for the infringing watches. Defendant also sold infringing watches to Frieder, Inc., of Bedford Heights, Ohio, and to Unreal Costume Jewelry of San Antonio, Texas.

Mr. Budhrani testified that at the time of the U.S. Customs Service confiscation he received advice from counsel that the green-red-green stripe device was Gucci's registered trademark. His sales thereafter were an intentional and knowing counterfeiting of Gucci's trademark, in bad faith, and his testimony to the contrary is incredible.

### Law

Section 32 of the Lanham Act, 15 U.S.C. § 1114, imposes liability for use or reproduction of a registered mark in connection with the sale of goods where "such use is likely to cause confusion, or to cause mistake, or to deceive."

Section 1125(a) prohibits "a false designation of origin, or any false description or representation" in the sale of goods.

Since Gucci has a registered trademark for its green-red-green stripe device, it need only establish that Pearl Industries' use of the green-red-green stripe device caused a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied sub nom. R.G. Barry Corp. v. Mushroom Makers, Inc.*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), the Second Circuit set out some of the factors a court should assess in determining the likelihood of confusion where plaintiff's and defendant's products are different:

the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

The green-red-green stripe device is a strong mark, *see Gucci Shops, Inc. v. Dreyfoos & Associates*, 222 U.S.P.Q. 302,

1983 WL 425 (S.D.Fla.1983), and the watches sold by Pearl Industries are nearly identical in this respect. Gucci and Pearl Industries' products are in proximity since both are watches; in addition, both market their watches through retail stores. Most important, Pearl Industries' willful and deliberate selection of the Gucci green-red-green stripe device demonstrates its bad faith and intent to trade upon Gucci's goodwill and reputation. *See Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 79 (2d Cir. 1985) ("Where a product's design has achieved secondary meaning, confusion is a likely consequence of copying.") Pearl Industries' watches are of markedly lesser quality, which might cause injury to Gucci's reputation when consumers associate Pearl Industries' watches with Gucci. *See Rolex Watch U.S.A., Inc. v. Canner*, 645 F.Supp. 484, 495 (S.D.Fla.1986).

Pearl Industries' use of the green-red-green stripe device is likely to cause confusion, mistake or deceit, and thus violates 15 U.S.C. §§ 1114, 1125(a) and the common law of unfair competition.

Pursuant to 15 U.S.C. § 1117, Gucci is entitled to an award of Pearl Industries' sales, less costs and deductions, which amount shall be trebled, and the costs of this action. *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir.1985).

To determine the number of infringing watches defendant imported and sold, Gucci proposes multiplying the percentage of Pearl Industries' watch models which are of the infringing style numbers (14 of 124 models or 11.29%), by the total number of watches Pearl Industries has imported, from Pearl Industries of Hong Kong, which the invoices establish at 150,538. The resulting figure (16,996) less the 44 watches seized from Pearl Industries (16,952) would then be multiplied by $3.05, representing the difference between $9.75 (the highest price for an infringing watch listed on Pearl Industries' invoices) and $6.70 (the cost per watch of the 1000 watches confiscated by U.S. Customs), yielding damages of $51,703.60.

■ However, the burden is on a plaintiff to establish defendant's gross sales of infringing goods. *Polo Fashions Inc. v. Magic Trimmings, Inc.*, 603 F.Supp. 13, 19 (S.D.Fla.1984). Although a defendant's failure to produce his records "leaves his cause exposed to indirect and less definite and certain methods of proof," the plaintiff must still show a "basis for a reasoned conclusion as to the extent of injury caused" by defendant. *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 193 (2d Cir.1959).

The cases Gucci cites in support of its calculation did not require the degree of inference involved in Gucci's suggested method. *See, e.g., Louis Vuitton, S.A. v. After Dark Boutique*, 680 F.Supp. 1507, 1510 (N.D.Fla.1988) (where defendant admitted selling infringing merchandise for a 17 month period, and was observed with 15 infringing articles available for sale on one occasion, and only 7 articles for sale five weeks later, court found sales of 6 articles per month reasonable); *Chesa International, Ltd. v. Fashion Assoc., Inc.*, 425 F.Supp. 234, 238 (S.D.N.Y.) (where defendants produced 11 invoices "purportedly representing every sale that possibly included items with the Givenchy emblem or imitation," reasonable to infer that all items infringed), *aff'd*, 573 F.2d 1288 (2d Cir.1977).

Gucci's inference that Pearl Industries sold an equal number of each of its watch styles is only speculation.

The evidence discloses fewer sales of infringing watches than Pearl Industries' representation (in its proposed findings of fact IV.5(a)) that it has sold 2128 watches of style numbers 1021, 1027, 1033, 1221, and 1019. Since its representation provides the highest available number of sales, it will be multiplied by $10.00, its similarly provided highest selling price (*id.* at IV. 5(b)). *See Chesa International, Ltd. v. Fashion Assoc., Inc.*, 425 F.Supp. at 238 ("fact-finder may calculate damages at the highest reasonably ascertainable value"). From that figure, $6.70 per watch will be deducted as costs. Accordingly, Gucci is entitled to a damages award of 2128 times

$3.30, equalling $7,022.40. This figure shall be trebled to $21,067.20.

Attorney's fees are awarded to a prevailing plaintiff where a defendant "cannot justify [its] actions as either a reasonable attempt to develop [its] own trademark or as the result of any innocent confusion." *Polo Fashions Inc. v. Magic Trimmings*, 603 F.Supp. at 19. Accordingly, Gucci is entitled to a reasonable attorney's fee.

Gucci is also entitled to a permanent injunction. 15 U.S.C. § 1116.

The parties are to submit a judgment in accordance with this ruling, on consent as to form if possible, within thirty days. Gucci must document its application for attorney's fees with contemporaneous time records. *See New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983).