**AMERICAN UNITED LIFE INSUR-
ANCE COMPANY, an Indiana
corporation, Plaintiff,**

v.

**AMERICAN UNITED INSURANCE
COMPANY, a Florida
corporation, Defendant.**

**No. 89–6191–Civ.**

United States District Court,
S.D. Florida.

Feb. 8, 1990.

Janet T. Munn, Steel Hector & Davis, Miami, Fla., for plaintiff.

Samuel R. Danziger, Goodhart, Rosner, Simon, Greenberg & Humbert, P.A., Miami, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT

JAMES LAWRENCE KING, Chief Judge.

This cause was tried from November 28, 1989, through December 1, 1989, before this court sitting without a jury. The court has heard and considered the testimony of the witnesses and considered the exhibits and the arguments of counsel. In accordance with Rule 52(a), Federal Rules of Civil Procedure, this court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Plaintiff, American United Life Insurance Company ("Plaintiff"), is a mutual life insurance company whose services consist of underwriting life, universal life, health, income replacement, accident, pension, group, hospitalization, and credit insurance, as well as providing reinsurance.

Defendant, American United Insurance Company ("Defendant"), is also in the business of providing insurance. Defendant sells private passenger and commercial automobile liability and property damage insurance.

Plaintiff adopted the trade name and service mark "American United Life Insurance Company" in 1936. Since that time, plaintiff has continuously used this trade name and service mark to market and sell its products and services.

Plaintiff is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Plaintiff was first licensed to conduct business in the state of Florida as an insurance company in 1937 under the name "American United Life Insurance Company" and has continuously maintained this license.

Defendant is a Florida corporation, which was formed in November 1983, and has been licensed in Florida to sell insurance under the name "American United Insurance Company" since 1984.

Plaintiff is the prior owner and user of the trade name and service mark "American United Life Insurance Company."

Plaintiff's origins date back to 1877, when one of plaintiff's predecessors first began doing business as an insurance company. Plaintiff's adoption in 1936 of the trade name and service mark "American United Life Insurance Company" occurred following the merger of its predecessor companies, American Central Life Insurance Company and United Mutual Life Insurance Company. The first word of each of the predecessor companies, "American" and "United," was arbitrarily chosen as the name for the new company.

Defendant's agent testified that the name "American United" was selected by defendant as the name for defendant's company because Saudi Arabians were serving as investors for a company which would be operated and managed by Americans in the United States. In the view of those individuals who formed the defendant corporation, the project demonstrated the unity of the two groups in this American venture.

The words "American United" are arbitrary as applied to insurance. There is no relationship between the words "American United" and the product each company sells, which is insurance. Clearly, these words are not descriptive nor generic of insurance.

Plaintiff's service mark, "American United Life Insurance Company," is a federally registered service mark which is listed on the Principal Register of the United States Patent and Trademark Office (Reg. No. 1,556,096). Plaintiff's service mark was registered September 12, 1989.

"American United Life Insurance Company" is also registered as a service mark with the state of Florida (State of Florida Reg. No. T1146). This registration occurred on July 24, 1989.

Defendant has not registered "American United Insurance Company" as a service mark, either federally or with the state of Florida.

Plaintiff markets and sells its policies and services under the trade name and service mark "American United Life Insurance Company" throughout the United States, including Florida. Plaintiff uses its trade name and service mark, "American United Life Insurance Company," in interstate commerce.

Plaintiff maintains general agencies in Florida with a total of 35–40 sales representatives in Florida. Two of these general agencies are located in Tampa, Florida. One agency is located in Boca Raton, another in Melbourne, and one in Jacksonville, Florida.

Since 1979, plaintiff has spent in excess of $5 million in advertising nationally its trade name and service mark, "American United Life Insurance Company," and has built up extensive good will in its name and a good reputation over the fifty years that it has been using the name "American United Life Insurance Company." Plaintiff advertises its trade name and service mark over the radio, on television, and in newspapers and other publications. In addition to the money expended directly by plaintiff for advertising, plaintiff's agents also advertise plaintiff's service mark and trade name in Florida. In addition, plaintiff prints and distributes to customers and prospective customers numerous pamphlets and brochures, which describe and promote plaintiff's products and services and advertise plaintiff's trade name and service mark, "American United Life Insurance Company."

Defendant has engaged in virtually no advertising of its name. The only use defendant makes of its name is the listing of its name on business forms and on a calendar printed by its managing agent. The calendar also contains the names of two other insurance companies as well as the name of the defendant's managing general agent, Public Assurance Group, Ltd., Inc. ("Public").

Defendant's business operations are conducted by its managing general agent, Public. Public performs every function of running defendant's company with the exception of handling claims. Public selects the individual agents who sell defendant's policies and Public makes all decisions as to acceptance or rejection of prospective insureds. Until some point in 1989, all claims were handled for the defendant by yet another company, the Apex Adjustment Bureau.

Plaintiff conducts its own business operations, handles its own claims, trains its agents to ensure uniformity in service, and makes its own decisions as to acceptance or rejection of prospective insureds.

Plaintiff was ranked in August 1988 by Best's Review. Best's Review is a publication of the A.M. Best Company and is considered to be a reliable and accurate source within the insurance industry, giving comparisons and ratings of insurance companies. Best's Review listed plaintiff as the nation's 66th largest life insurance company in terms of insurance in force, and the 73rd largest life insurance company in terms of assets. In 1988, plaintiff was ranked as the nation's 24th largest mutual life insurance company in terms of assets, and the nation's 20th largest mutual life insurance company in terms of life insurance in force. Plaintiff has consistently been awarded the highest rating an insurance company is given by the A.M. Best Company, the "A+ rating."

Since 1986, 2,507 consumer complaints have been filed with the Florida Department of Insurance against the defendant for its claim-handling delays. During this same period of time, plaintiff had only 35 complaints filed against it.

The only difference between the plaintiff's trade name and service mark, "American United Life Insurance Company," and the defendant's trade name and service mark, "American United Insurance Company," is the presence of the word "Life" in the plaintiff's name. The virtual identity of the two names has led to numerous instances of actual consumer confusion. Plaintiff's agents testified that their offices

received in excess of 60 telephone calls per month from persons who are confused and believe they are calling defendant. These callers are often customers of the defendant who have confused the two companies. Many of those who call the plaintiff's agents are calling to express dissatisfaction with the defendant's service. One caller in particular, Janet Boynton, testified by deposition that because of the close similarity in the names, she called plaintiff's agent believing it was the defendant's agent. The testimony proving actual confusion was unrebutted by defendant.

In addition, the state of Florida, as well as the state of New York, have required the plaintiff to respond to consumer complaints filed against the defendant. Plaintiff has also been served at its corporate headquarters in Indianapolis, Indiana, with lawsuits filed against defendant in Florida and other states. Defendant's wrongful acts thus have harmed plaintiff and are likely to continue to harm plaintiff in interstate commerce.

Plaintiff and defendant occupy the same industry. Each sells the same product, insurance. Plaintiff also offered proof that it is not uncommon for life insurance companies to own or be affiliated with automobile insurance companies. Under such circumstances, the two companies are related and use the same or similar names.

The plaintiff and defendant sell their products and services in a similar manner. Each sells insurance policies to purchasers of insurance through individual agents who operate out of individual insurance agencies.

Defendant's use of the name "American United Insurance Company" is confusingly similar to plaintiff's trade name and service mark, "American United Life Insurance Company."

Plaintiff acted promptly in instituting this action. Upon learning of the defendant's existence, plaintiff immediately called and then wrote defendant asking defendant to cease its infringing acts.

When defendant refused to cease infringement, plaintiff brought the instant action.

Defendant admitted that it made no effort prior to its incorporation and licensing to discover the existence of plaintiff or of plaintiff's prior ownership of the trade name and service mark, "American United Life Insurance Company." Defendant failed to make any effort to consult with the Florida Department of Insurance to determine if another insurance company was already doing business in Florida using the name "American United" prior to commencing business as an insurance company in 1984. Defendant could have easily called the Department of Insurance or consulted with public records of the department, which would have revealed that plaintiff was the only insurance company doing business in Florida using the words, "American United." Defendant admitted it made no effort whatsoever to undertake even this simple investigation, despite defendant's knowledge of the existence of state of Florida publications, such as the Report of the Department of Insurance for the year ending June 30, 1983, which would have immediately revealed to defendant the plaintiff's prior use of the name "American United." [1]

Defendant's president, Mark Trafton III, worked for the Department of Insurance for over fifteen years. At one time during Mr. Trafton's employment with the Department of Insurance, he was the director of the Division of Insurance Rating, a section which, *inter alia*, regulated life insurance companies. Mr. Trafton, who impressed the court as a fine person and a credible witness, testified that he could not say that he had never heard of the plaintiff prior to the institution of the lawsuit.

## CONCLUSIONS OF LAW

Plaintiff seeks to enjoin defendant from using the trade name and service mark, "American United Insurance Company." Plaintiff asserts that defendant has violat-

---

**1.** The Report of the Department of Insurance lists the names of insurance companies authorized to conduct business in Florida.

ed § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); that defendant has engaged in unfair competition and trade name and service mark infringement under the common law; and that defendant has violated the Florida anti-dilution statute, Florida Statute § 495.151. The court makes the following conclusions of law with respect to each of these claims:

This court has jurisdiction over the Lanham Act claim pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1338, and 28 U.S.C. § 1331. The court has jurisdiction over the common law claims pursuant to 28 U.S.C. § 1338(b) and pursuant to the doctrine of pendent jurisdiction. In addition, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

## UNFAIR COMPETITION PURSUANT TO SECTION 43(a), 15 U.S.C. § 1125(a)

■ To prevail on a claim for injunctive relief under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), plaintiff must demonstrate (1) that it is the prior owner of the trade name or service mark, and (2) that defendant adopted a trade name and service mark that is the same or confusingly similar to plaintiff's trade name or service mark so that there exists a likelihood of confusion to consumers as to the proper origin of the goods or services, such that a consumer is likely to believe that defendant's goods or services are being sold with the consent or authorization of the plaintiff, or that defendant is affiliated with or connected to the plaintiff. 15 U.S.C. § 1125(a); *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir.1984). Based upon the findings of fact made above, the court concludes that plaintiff has met each of these requirements and is, therefore, entitled to injunctive relief, pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to prevent defendant's use of the name "American United Life Insurance Company."

In making the determination of confusing similarity, this court considered and made factual findings with regard to the following seven factors: (1) the type of trade name or service mark used; (2) the similarity of the trade name or service mark; (3) the similarity of the product of service; (4) the similarity of the retail outlets and purchasers; (5) the similarity of advertising media used; (6) the existence of actual confusion; and (7) the defendant's intent. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 (11th Cir.1983); *see also Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259–264 (5th Cir.1980), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Upon consideration of each of these factors, the court finds that the plaintiff is entitled to injunctive relief.

Defendant contends that because the products or services which each party sells are not identical, life and health as compared with automobile insurance, it has not violated plaintiff's rights and is immune from suit by the plaintiff. The court finds this contention to be without merit. The law of unfair competition protects the prior owner of a mark from those who " 'sell their goods in such a way as to make it appear that they come from some other source.' " *Boston Professional Hockey Assn., Inc. v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir.1975) (quoting *American–Marietta Co. v. Krigsman*, 275 F.2d 287, 289 (2nd Cir.1960)), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). As found above, plaintiff and defendant occupy the same industry. Both sell insurance. That one company is authorized to sell life insurance and another automobile insurance does not answer the problem of consumer confusion. The distinction defendant seeks to draw is not one made by consumers. The product or services sold by each are the kind the insurance consuming public attributes to a single source. *See E. Remy Martin & Co. v. Shaw–Ross Intern. Imports*, 756 F.2d. 1525, 1530 (11th Cir.1985). The actual confusion which has occurred and continues to occur between the plaintiff and the defendant in this case amply supports this conclusion. Therefore, plaintiff is entitled to an injunction pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COMMON LAW UNFAIR COMPETITION

For the reasons set forth above and in the findings of fact, the plaintiff has also proved its claim for common law unfair competition. *Marathon Mfg. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir.1985). The elements a plaintiff must prove to prevail on a common law unfair competition claim based on trade name or service mark infringement are: (1) that plaintiff is the prior user of the trade name or service mark; (2) that the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning; (3) that the defendant is using a "confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name" or service mark; and (4) that as a result of defendant's action or threatened action, consumer confusion as to the source or sponsorship of defendant's goods and services is likely. *American Bank of Merritt Island v. First Am. Bank and Trust*, 455 So.2d 443, 445–6 (Fla. 4th DCA 1984), *review denied*, 461 So.2d 114 (Fla. 1985).

The competition requirement has been interpreted by the Florida Supreme Court to require a showing of "similarity in businesses of the parties." *Sun Coast v. Shupe*, 52 So.2d 805 (Fla.1951). In *Sun Coast*, the Florida Supreme Court held that a hotel corporation could not prohibit a real estate venture from using the words "Sun" and "Coast" in its name. *Id.* In reaching its decision, the court stated:

> We cannot see how the public could be deceived by appellees' use of the title "Suncoast" when there is not similarity in the businesses of the parties. In the case we have cited, and formerly approved, it was said that 'the courts interfere solely to prevent deception.' ... Further, the circumstances must lead to the conclusion that the business of the first user will suffer from the deceptive use, *or* that by reason of unfair competition there will be an imposition on the public.

*Id.* (emphasis added).

Under Florida law, the plaintiff must show either "that the public would be tricked" or that the plaintiff will be damaged because persons dealing with defendant are likely to believe they are dealing with the plaintiff. *Id.* at 806. For reasons set forth above, the court has found that the close similarity of the services offered by two businesses who both sell insurance has caused and is likely to continue to cause consumer confusion as to the source of origin or sponsorship of the defendant's goods and services.

For reasons set forth in the findings above, plaintiff has established the elements necessary to support a claim for common law unfair competition, and plaintiff is entitled to injunctive relief on this count as well.

## COMMON LAW TRADE NAME AND SERVICE MARK INFRINGEMENT

The elements required to prevail on a claim of common law trade name and service mark infringement are the same as those required to prevail under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) or under a claim for common law unfair competition. *See Selchow & Righter Co. v. Goldex Corp.*, 612 F.Supp. 19, 24 (S.D.Fla. 1985) (plaintiff must prove that the "infringing mark is likely to confuse consumers as to the source of the product, its endorsement by the trademark holder, or its connection with the holder," through evaluation of the seven factors); *see also American Bank*, 455 So.2d at 445–446. For reasons stated above, plaintiff has met its burden on this claim as well and is entitled to injunctive relief.

## DILUTION

Finally, plaintiff has a claim for dilution of its trade name and service mark pursuant to Florida Statute § 495.151. This court may award relief pursuant to § 495.151 if the plaintiff has proved:

> that there exists a likelihood of injury to business reputation or of dilution of the

distinctive quality of the mark [or] name ... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.

Fla.Stat. § 495.151.

■ Under this section of the Florida Statutes, neither competition nor confusion is required. *Id.* The court has found that plaintiff's trade name and service mark is distinctive and entitled to protection. The court has also found that defendant is using a virtually identical trade name and service mark, to promote the sale of services and goods to consumers of insurance. There is no doubt that the commercial value of the plaintiff's trade name and service mark is likely to be diluted by defendant's unauthorized use of a virtually identical trade name and service mark, and that this will create a likelihood of injury to plaintiff's business reputation. *Freedom Savings and Loan Assn. v. Way*, 757 F.2d 1176, 1186 (11th Cir.1985), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). On the basis of its prior findings and in consideration of the requirements of the Florida anti-dilution statute, the court concludes that plaintiff is entitled to relief on this claim.

### AFFIRMATIVE DEFENSES

Defendant raised affirmative defenses of laches and estoppel by incorporation and licensing. For reasons specified below, each of these defenses is without merit.

### LACHES

■ To prevail on the affirmative defense of laches, defendant must prove three elements: "(1) a delay in a right or claim; (2) that the delay was not excusable; and (3) that the delay caused defendant undue prejudice." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir.1984). Defendant failed to prove that plaintiff delayed in bringing its claims. The evidence at trial demonstrated the contrary. As soon as plaintiff learned about defendant, plaintiff immediately demanded that defendant cease its infringing acts. Defendant refused, assuring plaintiff that there could be no public confusion. When plaintiff experienced additional confusion, plaintiff renewed its demand, which defendant again rejected. Plaintiff then immediately brought suit. Therefore, since the defendant has not shown inexcusable delay, it has not sustained its burden of proving laches.

### ESTOPPEL BY VIRTUE OF INCORPORATION AND LICENSING

■ Defendant contends that its incorporation by the state of Florida and its licensing by the Florida Department of Insurance grants defendant immunity from suit. This contention is contrary to longstanding Florida law. As long ago as 1926, the Supreme Court of Florida held:

> The act of sovereignty in allowing incorporation under a particular name is permissive only. It sanctions the act of incorporation under the name chosen and for the business proposed, if that name and that business be otherwise lawful, but *in granting a corporate charter the sovereign adjudges neither the legality of the business nor of the name chosen. That is a matter for judicial determination by a court of competent jurisdiction.* An individual will be enjoined, in proper cases, from the fraudulent or deceptive use of his own natural name. With even greater justification will an artificial person, a corporation, be enjoined from such a use of a corporate name voluntarily chosen by it.

*Children's Bootery v. Sutker*, 91 Fla. 60, 107 So. 345, 349 (1926) (emphasis added).

The acceptance or approval of a name by a state agency such as the Florida Department of State is not a defense to the claims brought in this lawsuit. *American Auto.*, 618 F.Supp. at 797 (rejecting defendant insurance company's claim that licensing is a defense to Lanham Act claims and citing *Children's Bootery*, 107 So. at 349); *see also Shatterproof Glass Corp. v. Buckmaster*, 256 So.2d 531, 533 (Fla. 2d DCA), *cert. denied*, 264 So.2d 427 (Fla.1972).

In addition, the Florida Supreme Court's holding is reiterated in the Florida Administrative Code:

IN–1.002 Name Assignments.

Any and all corporate names issued by this Division under chapters 607 and 617, Florida Statutes, are based only upon the records of this Division and the rules of this Division at the time of filing and are not based upon any other corporate entity filed by the United States government or its agencies *or protected by Federal Law,* nor are these filings based upon the records of any other state agency, nor is the Division responsible for those persons or groups of persons who style themselves as a corporation nor those who use a corporate suffix not of the Division's filing. *The filing of any corporate entity is only a grant of authority to use such a name and does not include the adjudication of the legality of such use.*

Fla.Admin. Code Ann. r.1N–1.002 (1989) (emphasis added). Incorporation by the state of Florida, therefore, is not a defense to trade name or service mark infringement, unfair competition, or anti-dilution claims.

Similarly, the permission to engage in business in Florida as an insurance company is *not* a defense under the Lanham Act or under state law. *Children's Bootery,* 107 So. at 349. As an agency of the state of Florida, the Florida Department of Insurance does not regulate or adjudicate the legality of the use of a particular name by any insurance company seeking to do business in Florida. *Id.* Additionally, the Lanham Act was specifically intended by Congress to protect and make actionable the use of deceptive and misleading marks in commerce and to protect persons engaged in such commerce against unfair competition. 15 U.S.C. § 1127.

Therefore, neither defendant's incorporation in Florida under the name "American United Insurance Company" nor its licensing by the Florida Department of Insurance constitutes a defense to plaintiff's action to enjoin trade name and service mark infringement, unfair competition, and

dilution of its trade name and service mark. *See American Auto. Assoc. (Inc.),* 618 F.Supp. at 798 (relying in part on the Florida Supreme Court decision in *Children's Bootery,* 107 So. at 349).

## ATTORNEYS' FEES AND COSTS

Plaintiff has requested an award of attorneys' fees and costs. Pursuant to 15 U.S.C. § 1117, this court has the authority to award fees to a prevailing party where there is evidence of fraud or bad faith. *Safeway Stores, Inc. v. Safeway Discount Drugs,* 675 F.2d 1160, 1166 (11th Cir.1982); *see also Jellibeans Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 846 (11th Cir.1983). As the court has found above, this entire controversy and the harm the plaintiff has suffered could easily have been avoided had defendant made even the slightest inquiry. After carefully considering all of the evidence presented at trial this court finds under the facts of this case that the defendant's actions constitute bad faith under 15 U.S.C. § 1117, and accordingly the court awards the plaintiff its attorneys' fees.

Both sides presented expert testimony at trial, regarding the reasonable amount of attorneys' fees. Since the trial, the plaintiff has submitted invoices supporting its claim and an affidavit from its expert regarding the reasonableness of the amount of fees incurred in trial preparation and for time spent in trial. Defendant's expert has reviewed the affidavit of the plaintiff's expert, as well as the invoices, and has submitted an affidavit regarding the claim for fees incurred by plaintiff in trial preparation and for time spent in trial. Plaintiff seeks an award of fees in the amount of $100,303.60. Defendant, while objecting to the award of fees, admits that $80,803.60 is a reasonable amount to be awarded to plaintiff. The court has carefully considered the testimony of the experts for each party, together with the documentation on fees provided by the plaintiff and hereby awards the plaintiff attorneys' fees in the amount of $95,803.60.

Finally, the court determines that the plaintiff is entitled to its costs of prosecut-

ing this action. 15 U.S.C. § 1117(a); Rule 54(d), Federal Rules of Civil Procedure; *see also Polo Fashions, Inc. v. Magic Trimmings, Inc.*, 603 F.Supp. 13, 19 (S.D.Fla. 1984). The plaintiff has supplied its bill of costs, along with a supporting memorandum of law, and the defendant has filed its objections. Having carefully reviewed the plaintiff's itemized bill of costs, the defendant's objections, and the applicable law, the court finds that the following costs are taxable against the defendant:

| | | |
|---|---|---|
| (A) | Fees of the Clerk | $ 160.00 |
| (B) | Fees of the court reporter necessarily obtained for use in the case | $ 4,937.89 |
| (C) | Fees for witnesses (includes attendance fees and mileage costs for witnesses; subsistence and travel costs for plaintiff's witnesses at trial and deposition) | $ 1,790.90 |
| (D) | Process server fees | $ 978.00 |
| (E) | Fees for exemplification and copies of papers necessarily obtained for use in the case | $ 1,655.65 |
| (F) | Counsel's travel expenses | $ 1,210.79 |
| | Total: | $10,733.23 |

## CONCLUSION

On the basis of the foregoing, the court concludes that plaintiff has demonstrated its entitlement to a permanent injunction for defendant's violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for defendant's acts of unfair competition, trade name, and service mark infringement under common law; and for defendant's violation of Florida Statute § 495.151. In addition, the court awards attorneys' fees and costs of the action to the plaintiff. The terms and conditions of the injunction awarded to plaintiff are set forth below in the Final Judgment.

## FINAL JUDGMENT

This cause came on for trial for permanent injunction before the court sitting without a jury. The court having heard and considered the testimony of the witnesses, the exhibits, and the argument of counsel, finds and concludes, for the reasons set forth in the findings of fact and conclusions of law, that plaintiff is entitled to a permanent injunction, attorneys' fees, and costs. Accordingly, it is

ORDERED, ADJUDGED and DECREED that final judgment is entered in favor of the plaintiff, American United Life Insurance Company, and against the defendant, American United Insurance Company. The defendant, its officers, directors, agents, servants, employees, attorneys, and all persons, firms or corporations acting or claiming to act on their behalf or under their direction or authority, and all persons and firms acting or claiming to act in participation or concert with them, are hereby permanently enjoined:

(1) from using on or in connection with the manufacture, sale, offering for sale, distribution or the advertisement, labeling or packaging of any products or services, plaintiff's trade name or service mark, "American United Life Insurance Company," or any colorable imitation thereof or anything confusingly similar thereto;

(2) from representing by any means whatsoever that any services sold, offered for sale, or advertised by defendant, are sponsored, licensed, authorized by, or originate with plaintiff, or from otherwise taking any action likely to cause confusion, mistake or deception on the part of the public as to the origin or sponsorship of such services; or

(3) from passing off defendant's business and the services offered through that business as being owned, operated, or otherwise affiliated with plaintiff.

That in ensuring compliance with the above, the defendant is hereby directed to effect a change of its corporate name with the Florida Department of State and the Florida Department of Insurance within 120 days of the entry of the permanent injunction, so that the words "American United" are no longer a part of the defendant's name.

Until the effective date of the change of its corporate name, the defendant is hereby required to place on the face of all correspondence, including but not limited to invoices, envelopes and flyers used by defendant, the following disclaimer of affiliation with plaintiff:

"American United Insurance Company is not affiliated with or connected to American United Life Insurance Company."

Defendant is hereby directed to file with this court within 120 days of the entry of this permanent injunction, a written statement under oath, setting forth in detail the manner in which defendant has complied with the court's injunction and order.

The plaintiff is hereby awarded attorneys' fees in the amount of $95,803.60, for which let execution issue.

The plaintiff is hereby awarded its costs in the amount of $10,733.23, for which let execution issue.

This court hereby retains jurisdiction to enforce the terms of this permanent injunction and final judgment and to award such other relief as this court may deem appropriate.

DONE AND ORDERED.